LABORDE, Judge.
Defendant, Robert Saltzman, was charged by indictment with three (3) counts of aggravated rape, in violation of La.R.S. 14:42. A jury of twelve found defendant guilty on count two of the indictment, the aggravated rape of L.P. Defendant was sentenced to serve a term of life imprisonment at hard labor, without the benefit of parole, probation or suspension of sentence. In four assignments of error defense counsel alleges: 1) the evidence is insufficient to support the verdict; 2) the trial court erred in denying defendant’s motion for a post verdict judgment of acquittal; 3) the trial court erred in admitting scientific tests that merely indicate the possibility of guilt; and 4) the verdict is unconstitutional because the statutes upon which it is based grant sentencing authority to the jury.
ASSIGNMENTS OF ERROR NOS. 1 AND 2
In assignment of error number one defense counsel asserts the evidence is insufficient to support the verdict. Defense counsel in assignment of error number two asserts the trial court erred in failing to grant defendant’s motion for a post verdict judgment of acquittal. The standard of review applicable to both assignments of error is whether the evidence, viewed in a light most favorable to the prosecution, reasonably supports the verdict. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); La.C.Cr.P. 821. When the issue is identification, as it is in this case, the state has to “negate any reasonable probability of misidentification in order to carry its burden of proof.” State v. Smith, 430 So.2d 81, 45 (La.1983).
On July 30, 1986, L.P. was babysitting at her aunt’s trailer located on Bonin Road in Lafayette Parish. At approximately 2:00 a.m. she was awakened by the presence of someone in the living room of the trailer. As she was awakened and attempted to get up, a pillow was put in her face. She realized there were two men in the room because one told her to be quiet and the other told her to keep her eyes shut. The pillow was removed from her face and a pillow case was then tied around her eyes. In the interim she noticed one of the men was wearing blue jean shorts and the other had on a long green coat. One of the individuals was armed with a gun and L.P. had an opportunity to clearly observe the gun and at one time it was placed to her head.
The two men then had anal and vaginal intercourse with L.P. L.P. was also forced to have oral sex with both individuals and also to perform oral sex on one while having intercourse with the other. While re *1010 quiring L.P. to perform these acts, one of the individuals asked her what her name was and she told him. L.P. recalls these two individuals referring to each other by the name of “Tee.” This name was used by both individuals in referring to each other. At one point, one of the individuals called the other one “Tee-Bob,” but he then tried to cover up by saying “Oh, you know my name’s not that, it’s Carl.” Because both of the individuals who raped L.P. wore face coverings, she was unable to identify the defendant as one of them.
After having qualified as an expert, Howard Verret, Jr. testified as to the results of tests conducted in connection with the rape of L.P. After reporting the rape, L.P. was taken to a nearby hospital for examination. In, connection with this examination, vaginal and rectal slides were prepared for analysis. Mr. Verret examined the slides and found spermatozoa on both slides. A presence of spermatozoa is consistent with sperm having been present in those areas and indicative of sexual intercourse in those areas. Based on blood samples taken from L.P., defendant, and Billy Morgan, it was determined that defendant is a possible donor of the semen found on the bedspread examined and the vaginal swab and slide. Based on a typing under the PGM system, the conclusion can be drawn that defendant was a possible donor of the semen found on the bedspread.
Given the testimony of the victim, L.P., and the expert, Howard Verret, the evidence is clear that L.P. was raped. However, the challenge to the sufficiency of the evidence is directed toward the evidence linking defendant to the rape.
Although L.P. was unable to see the faces of those who raped her, there are several facts brought out by the investigation linking defendant to this crime. First, between the time the pillow was removed from her face and when she was blindfolded, L.P. observed that the shorter of the men wore blue jean shorts while the taller wore a long green coat. On obtaining consent to search the bedroom of defendant, among the several items seized was a pair of blue jean shorts. Upon learning that some time prior to his arrest defendant had stayed at his sister’s residence, a search warrant was obtained to search the trailer of Sherry Duplechin, defendant’s sister. From that residence, a long green ankle-length trench coat was seized. After its seizure the coat was shown to L.P. and she identified it as the coat worn by the taller of the individuals who raped her (the one alleged to be the defendant).
An important part of L.P.’s testimony is her recollection of the names used by the individuals in referring to each other. As previously noted, L.P. testified that the individuals used the name “Tee” in referring to each other. She also testified one called the other “Tee-Bob” but then there was an attempt to cover up by saying his name was Carl. Testimony presented at trial showed that defendant was called “Tee-Bob” by his friends.
Billy Morgan is a juvenile who is currently incarcerated after having pled guilty to aggravated rape charges arising out of the incidents for which defendant is on trial. Billy Morgan testified that he knows a “bunch” of people who are called “Tee.” “They got a person named Tee-Fred that lives in Broussard. They got a person named Tee-Ken that lives in our trailer park, right here. Then they got Tee-Bob. And that’s about all I know.” Defense counsel was apparently attempting to show that the “Tee” who raped L.P. could have been anyone as the name “Tee” is used to refer to numerous individuals. While Billy Morgan said “Tee” was used to refer to many persons, he admitted that he did not hang around Tee-Fred or Tee-Ken. He also admitted that he primarily associated with Tee-Bob, defendant, in late July and early August.
Defendant admitted people use the name “Tee” or “Tee-Bob” in referring to him, however, he also stated that “Tee” was a name used to refer to several persons in the neighborhood. If the two persons who raped L.P. had used only the name “Tee” in her presence it would be more difficult to conclude defendant, “Tee-Bob,” was one of the individuals who committed the rape. *1011 However, L.P. testified that the names “Tee” and “Tee-Bob” were used in her presence. While defense counsel attempted to show the name "Tee” was used to refer to numerous individuals, the defendant and Billy Morgan said nothing about “Tee-Bob” being used to refer to anyone other than defendant.
Three rapes occurred within a short distance of each other in Lafayette Parish within about a 10 day period. The defendant and Billy Morgan were both arrested and charged with committing these crimes. Based upon similarities of the crimes, testimony of the victims, proximity of where the rapes occurred along with the locations of defendant’s trailer and Billy Morgan’s trailer, investigators believed that the same two persons committed all three rapes. The first victim, CJ., positively identified Billy Morgan as one of the persons who raped her. She was unable to identify the other person who committed the rape because he wore a ski mask to cover his face. L.P. and the third victim, V.L., both stated that they could not identify the persons who raped them because they wore masks.
Police investigations found jewelry taken from one victim and a gun taken from another in a search of Billy Morgan’s trailer. Subsequent to his arrest, Billy Morgan gave a statement implicating himself and the defendant in all three rapes. The statements made by Billy Morgan were very specific and virtually identical to every detail of the testimony of the victims. However, at defendant’s trial Billy Morgan claimed that he was pressured into making these statements and simply made up these stories to satisfy the police. This claim by Morgan seems incredible based upon the details and similarities of his prior statement and the statements given by the victims. The prosecution used these prior statements made by Morgan to attack the credibility of Morgan’s testimony at trial. After considering the three charges against defendants the jury found that only the rape of L.P. was supported by sufficient evidence to find the defendant guilty of that rape beyond a reasonable doubt.
The testimony of Jeffrey Dupont supports the jury’s determination that defendant raped L.P. At the time of the three rapes, Mr. Dupont lived in the same trailer park as defendant and Billy Morgan and has known both of them for several years. Between 11:30 p.m. and 12:00 a.m. the night after the rape of L.P. and the night before the rape of V.L., Billy Morgan and defendant visited Mr. Dupont at his trailer. The three later went to defendant’s sister’s trailer and watched pornographic movies. Defendant and Billy Morgan began telling Jeffrey "... how they both made it with this girl the night before.” The story relayed to Jeffrey by defendant and Billy went as follows: “They said they were walking by the apartment complex and they seen this girl skinny dipping and then they started talking to her and then she invited them into her apartment and then they had sex with her and everything ...” Robert and Billy described how one was having vaginal intercourse with this girl while the other was having oral sex with her. When asked if defendant and Billy made mention of the girl’s name, Jeffrey responded, “At first they said a name like L.P. [victim’s first name was given]. And then they switched it, like three or four times during the story.” Jeffrey testified that defendant was doing most of the talking and Billy would inject himself into the conversation every few minutes. In defendant’s testimony, he admitted to telling Mr. Dupont that he and Billy Morgan had “doubled up” on someone the night before although he claimed that it was a joke and denies telling Dupont that her name was L.P.
It should be noted that the conversation between Jeffrey, defendant and Billy took place the night after L.P. was raped. The description by defendant and Billy as to the acts performed with the girl matched L.P.’s description of the acts she was required to perform in the course of the rape. Also, defendant and Billy told Jeffrey the girl’s name was L.P. and during the course of the rape one of the rapists asked L.P. her name and she told him.
One witness, Elizabeth Lee, testified at trial that she had seen two individuals (one *1012 of which she identified as defendant) roaming around the trailer park looking through windows and turning door knobs of some of the trailers. She stated that she saw all of this the week before the rape of C.J. and believed that the date was sometime between July 17 and July 21, 1986. The defendant claims that he was in Missouri from July 4 to July 22, 1986 and he relies on testimony by his girlfriend and some of his relatives to support this contention. He thus argues that Ms. Lee could not have seen him snooping around trailers on that date. Whether the defendant returned to Louisiana on July 22 or sometime earlier was for thé jury to decide after considering the testimony of the witnesses. The assessment of witnesses’ credibility lies within the sound discretion of the trier of fact. State v. Klar, 400 So.2d 610, 613 (La.1981).
In the present case, it is clear that all of the existing evidence against the defendant was circumstantial. An appellate review of a conviction based upon circumstantial evidence must determine, when viewing the evidence in the light most favorable to the prosecution, that a rational trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence has been excluded. State v. Austin, 399 So.2d 158, 160 (La.1981). We must also determine by viewing the evidence in the same manner that there was sufficient evidence for a rational trier of fact to find the essential elements of a crime beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Edwards, 400 So.2d 1370, 1372 (La.1980). After considering the evidence previously discussed herein, we feel that there was’ sufficient evidence to support the jury’s verdict finding the defendant guilty of the aggravated rape of L.P. We also hold that the trial court correctly denied the defendant’s motion for a post verdict judgment of acquittal. Therefore, defendant’s Assignments of Error Nos. 1 and 2 have no merit.
ASSIGNMENT OF ERROR NO. 3
Defense counsel asserts the trial court erred in admitting scientific tests which indicate only a possibility of guilt. The state’s expert conducted tests in connection with the rape of L.P. and from these tests concluded defendant was a possible donor of the semen found on the bedspread and the vaginal swab. It is defense counsel’s contention that the evidence is inadmissible because the results indicate only that defendant is a possible donor.
LSA-R.S. 15:441 states:
“Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent.
Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible.”
The Louisiana Supreme Court considered the application of this statute in State v. O'Quinn, 342 So.2d 202, 206 (La.1977) saying:
“The evidentiary fact offered does not need to have strong, full representative value, or to produce persuasion by its role and intrinsic form, but it is sufficient if it is worth consideration by the jury” (citations omitted).
The trial court in the present matter allowed in the scientific evidence presented by the prosecution. “Absent a clear abuse of discretion, a trial judge’s ruling as to the relevancy of evidence should not be disturbed.” (citation omitted) State v. Rault, 445 So.2d 1203, 1208 (La.1984), cert denied, 469 U.S. 873, 105 S.Ct. 225, 83 L.Ed.2d 154 (1984). The scientific evidence presented here by the state was not in and of itself conclusive as to the defendant being one of the persons who raped L.P. The' test simply concluded that defendant, based upon his blood type, was a possible donor of the semen found in the rape investigation. (The test determined that he was in the 40% of the population that could have been a donor). The test, therefore, is evidence that the crime could have been committed by the defendant. It was worth consideration by the jury in determining the guilt of the defendant. This assignment of error thus lacks merit.
*1013 ASSIGNMENT OF ERROR NO. 4
Defendant argues that the jury’s verdict is unconstitutional because the statutory scheme grants sentencing authority to the jury. He claims that the aggravated rape statute, LSA-R.S. 14:42, and the forcible rape statute, LSA-R.S. 14:42.1, are virtually identical. He cites State v. Kirkley, 470 So.2d 1001, 1010-1011 (La.App. 1 Cir.), writ denied, 475 So.2d 1105 (La.1985), cert. den., 474 U.S. 1061, 106 S.Ct. 808, 88 L.Ed.2d 783 (1986), as differentiating between the two crimes based upon the degree of force used and the extent to which the victim resists. He then claims that because the jury determines which crime was committed by assessing the degree of force used, the jury is basically given the authority to determine defendant’s sentence and the jury does not consider proper sentencing guidelines in doing so. Thus the defendant claims that allowing the jury to make such a determination resulted in his unconstitutional sentencing. The constitutionality of these statutes was upheld by the Louisiana Supreme Court in State v. Willie, 422 So.2d 1128 (La.1982), where the court held that these statutes were not unconstitutionally vague. The Willie court explained State v. Parish, 405 So.2d 1080 (La.1981) (on rehearing), affirmed after remand, 429 So.2d 442 (La.1983) and said:
“We concluded that it was the legislative aim to divide the continuum of acts of coerced sexual intercourse into two categories, aggravated rape and forcible rape, thereby assigning to the jury the function of fixing the range of permissible punishment for convicted offenders by returning a verdict which appropriately fits the crime and the degree of force employed.”
State v. Willie, 422 So.2d at 1129. Thus in assessing the evidence the jury is to determine if the evidence is sufficient to support a verdict of guilty as charged or guilty of the lesser included offense. Forcible rape is the responsive verdict to aggravated rape depending upon the degree of force used and the extent of the victim’s resistance. Id. When the jury determines that a defendant is guilty of aggravated rape, that defendant will be sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence.[1] If, on the other hand, the jury had found the defendant not guilty of aggravated rape, but instead guilty of the lesser included offense of forcible rape, then the defendants’ sentence would be between five and forty years imprisonment.[2] In the case of a verdict of aggravated rape, the jury does not determine what the defendant’s sentence will be, that decision has already been made by the legislature and will be *1014 life imprisonment.[3] If the jury’s verdict is guilty of the lesser offense of forcible rape, then the judge will determine the defendant’s sentence within the range of five to forty years after proper sentencing guidelines have been considered. Thus in the present case, the jury simply considered the evidence and found that the defendant was guilty beyond a reasonable doubt of aggravated rape. The jury did not determine the sentence to be served by defendant as it was already determined by the legislature as provided by LSA-R.S. 14:42. Defendant’s assignment of error number 4 thus lacks merit.
For the above reasons, the conviction and sentence of the defendant, Robert Saltz-man, is affirmed.
AFFIRMED.
DOMENGEAUX, J., concurs.

. LSA-R.S. 14:42 provides:
§ 42. Aggravated rape
A. Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
(4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
(5) When two or more offenders participated in the act.
B. For purposes of Paragraph (5), "participate” shall mean:
(1) Commit the act of rape.
(2) Physically assist in the commission of such act.
C.Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.”

. LSA-R.S. 14:42.1 provides:
§ 42.1 Forcible rape
A. Forcible rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
B. Whoever commits the crime of forcible rape shall be imprisoned at hard labor for not less than five nor more than forty years. At least two years of the sentence imposed shall be without benefit of probation, parole, or suspension of sentence.

. In State v. Foley, 456 So.2d 979, 981 (La.1984), the court said:
"The mandatory life sentence for aggravated rape is a valid exercise of the state legislature’s prerogative to determine the length of sentence for crimes classified as felonies.” (citations omitted).