405 So.2d 1080 (1981)
STATE of Louisiana
v.
Marvin D. PARISH.
No. 80-KA-1769.
Supreme Court of Louisiana.
January 26, 1981.
Dissenting Opinion September 3, 1981.
Opinion on Rehearing October 16, 1981.
Rehearing Denied November 27, 1981.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul Carmouche, *1081 Dist. Atty., Robert W. Gillespie, Jr., Asst. Dist. Atty., for plaintiff-appellee.
Jeanette G. Garrett, Indigent Defender Program, Wellborn Jack, Jr., Jack, Jack, Cary & Cary, Shreveport, for defendant-appellant.
CUTRER, Justice Ad Hoc.[*]
By bill of information filed July 16, 1979, defendant, Marvin Parish, was charged with attempted aggravated rape, a violation of La.R.S. 14:42 and 14:27. A twelve-person jury found the defendant guilty as charged. The trial court sentenced him to twenty (20) years at hard labor. On appeal the defendant urges ten[1] assignments of error as grounds for reversal of his conviction and sentence.

ASSIGNMENTS OF ERROR NUMBERS 8 AND 9
The defendant, through these two assignments, contends that the conviction must be reversed because a rational trier of fact could not have found that the essential elements of the offense of attempted aggravated rape were proven beyond a reasonable doubt.
In resolving this issue, we must determine:

"... whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of facts could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The issue, therefore, is whether any rational jury could have found beyond a reasonable doubt from the evidence in this case that Williams obtained credit for the purchase or acquisition of money, goods or services." State v. Williams, 389 So.2d 384, 385 (La.1980).
The defendant was charged with attempted aggravated rape.
Aggravated rape is set forth in LSA-R.S. 14:42. The pertinent part of this statute reads as follows:
"Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
1) Where the victim resists the act to the utmost, but whose resistance is overcome by force; or
2) Where the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution; ..."
The pertinent part of the attempt statute, as set out in LSA-R.S. 14:27, reads as follows:
"A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
"B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt; ...."
According to these statutes the state must prove that the defendant had the specific intent to commit aggravated rape upon Lynda Herzog and that the defendant performed an act for the purpose of and tending directly toward the accomplishing of his object.
*1082 The evidence most favorable to the state reveals the following:
On March 10, 1979, Lynda Herzog was alone in her apartment watching television and heard a knock on the door at approximately 11:00 P.M. When she answered the door defendant, Marvin Parish, stated that his name was Steve and that he was a neighbor and needed change for the laundromat. Ms. Herzog turned and walked away from the door to get some quarters. She testified that when she turned around the defendant had closed and locked the door and was standing immediately behind her. She bumped into him as she turned around. The defendant apologized and said he didn't mean to scare her. She gave him change for a dollar and began slowly urging him toward the door, but the defendant did not leave. At that point she was frightened and attempted slowly to open a drawer behind her and get a butcher knife out but changed her mind when she thought he may try to take it from her. She stated that the defendant grabbed her by putting one hand over her mouth and one hand around her throat. He then told her he wanted to make love to her. She stated that during the episode he used the word "rape" in expressing his intentions. He told her not to scream or he would kill her. He grabbed and held her so tightly that she was unable to breathe. She began getting weak due to the pressure exerted upon her. In the struggle Ms. Herzog lost her contact lens and her blouse was torn and she received a small cut near her eye. After she promised not to scream by nodding her head, he released his hold on her. Ms. Herzog stated she was terrified and told him she would do anything he wanted so long as he didn't hurt her.
Ms. Herzog then began talking to stall for time. She told him her son was due to come home at any time and that he had a gun. As instructed by defendant, she closed the drapes in the living room. She stated that the defendant grabbed her by the shoulder, neck and hair and began dragging her down the hall toward the bedroom. At that point he tripped over some clothing stacked in the hallway. More conversation ensued. He told her to undress or he would undress her. She kept talking to him and stalling for time.
Finally, the defendant, for reasons best known to himself, decided to discontinue his actions, at which time he apologized to Ms. Herzog and left. Ms. Herzog stated that during the course of events the defendant never took off any of his clothing, nor did he remove any of hers. She stated that the defendant's zipper was partially unzipped and she noticed that he had an erection.
Ms. Herzog stated that she was approximately 5 feet 3 inches tall and weighed 120 pounds. She stated that the offender was approximately 6 feet tall and weighed 250 pounds.
After the defendant left, Ms. Herzog called a friend in Atlanta, Georgia, who told her to call the police. An officer arrived and took her complaint. A print was lifted from a beer bottle that the defendant left behind. Some months later defendant was arrested and fingerprinted on a Peeping Tom charge. In June his prints were matched with the print lifted from Ms. Herzog's apartment and he was arrested and charged with attempted aggravated rape.
These facts show that the defendant had the specific intent to commit the offense of aggravated rape upon Ms. Herzog. He lied to Ms. Herzog to gain entrance to her apartment; he unequivocally made known to her by his words and appearance that he intended to have sexual intercourse with her; defendant used physical force upon Ms. Herzog as he made his intention known; Ms. Herzog resisted his actions to the best of her ability, considering the comparative sizes of the defendant and Ms. Herzog; the defendant threatened her with death if she resisted; defendant dragged her down a hallway to a bedroom for the purpose of fulfilling his intended desires when he fell over the clothing. After the fall and more talking, stalling and pleading by Ms. Herzog, defendant abandoned his plan of action.
The words and actions of defendant fulfill the requirements of LSA-R.S. 14:27, in *1083 that, by using physical force upon her after making known to her that he intended to commit rape and especially by forcing her toward the bedroom for the purpose of committing the rape, he committed "an act for the purpose of and tending directly toward the accomplishing of his object" (aggravated rape). The record presents ample evidence for the jury's verdict.
Assignments of error Numbers 8 and 9 are without merit.

ASSIGNMENT OF ERROR NUMBER 10
This assignment presents the issue of whether the sentence of twenty years at hard labor is excessive. The maximum sentence for attempted aggravated rape is fifty years at hard labor. The trial court did not conduct a sentence hearing, but did conduct a hearing on a motion by defendant to be released on bond. At this hearing considerable testimony was given by defendant's parents, his wife and employer about defendant's past emotional problems, his employment record and somewhat stormy marital situation.
The record reveals that the trial judge followed the sentencing guidelines prescribed by La.C.Cr.P. art. 894.1. In imposing the sentence he weighed the facts of the instant case. He pointed out that defendant threatened Ms. Herzog's life; he used a ruse to gain entrance to Ms. Herzog's apartment and there attempted to accomplish his objective with Ms. Herzog. No provocation emanated from Ms. Herzog. He pointed out that defendant had no prior delinquencies or criminal activity but also noted:
"... Counsel has acknowledged, as well as Mr. Parish, in prior conversation to the Court that Mr. Parish was in need of some type of psychiatric care and attention,...."
He stated that this type of conduct was known to defendant and members of his family for a time before this incident. No such treatment had been sought or provided, however.
The court also had information before it that defendant had been charged with being a "Peeping Tom," which charge arose after the incident in question. The court, after considering these factors, concluded that defendant would not respond affirmatively to probation. The court felt that defendant would again commit such a crime.
Having so concluded, and after further deciding that a lesser sentence would depreciate the seriousness of the crime committed, the trial judge imposed the sentence of twenty years at hard labor, less than one-half of the maximum of fifty years.
As we consider the favorable parole and good time laws applicable to incarcerated persons in this state, we conclude that, under the circumstances presented, the sentence does not constitute cruel or unusual punishment.
For the reasons set forth herein, the conviction and sentence are affirmed.
AFFIRMED.
DIXON, C. J., concurs.
DENNIS, J., dissents with reasons.
DENNIS, Justice, dissenting.
I respectfully dissent.
The majority opinion does not recite additional undisputed facts favorable to the defendant which bear heavily on the issue of whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt of attempted aggravated rape: The victim could not recall who first brought up the word "rape" in the course of the defendant's visit. The defendant did not attempt to take off his pants, unzip his zipper, or get on top of the victim. He never touched her breasts or her genital area.
In interpreting the articles of the criminal code all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision. La.R.S. 14:3. Accordingly, the closely related offense of forcible rape, La.R.S. 14:42.1, must be considered in determining *1084 the meaning of aggravated rape under La. R.S. 14:42(2) and in considering whether the evidence is sufficient to support the conviction.
In order to attempt to commit a crime an offender must actively desire to cause the specific results required by a particular criminal statute and do or omit an act for the purpose of and tending directly toward the accomplishing of his object. La.R.S. 14:10, 27.
Accordingly, in order to commit attempted aggravated rape, an offender must actively desire to commit rape by (1) overcoming the victim's utmost resistance by force; (2) preventing the victim from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution; or (3) having anal or vaginal sexual intercourse with a victim under the age of twelve years.[1] La.R.S. 14:42.
It is clear that the evidence in this case was sufficient to warrant a finding that the defendant actively desired to engage in sexual intercourse and that he did an act for the purpose of and tending directly toward the accomplishing of his object. It is equally clear, however, that the evidence in this case would not support a rational finding that defendant specifically intended to rape a victim under the age of twelve years or to overcome the victim's utmost resistance by force. The victim in this case, a mature woman, was well over the age of twelve. The evidence shows without dispute that the unarmed defendant never exerted great force and abandoned his attempt before encountering strenuous resistance for no reason other than a change of heart.[2] The evidence, thus, does not support a finding beyond a reasonable doubt that the defendant had an active desire to overcome the victim's utmost resistance by force. Consequently, the only form of aggravated rape which the defendant could have actively desired was that "[w]here the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution." La. R.S. 14:42(2).
The legal definition of this form of aggravated rape is virtually identical to that of forcible rape. There is no essential difference between the specific results required by each crime definition. Both require that the victim be prevented from resisting by threat of great harm under circumstances where the victim reasonably believes that resistance would be futile. Compare La.R.S. 14:42(2) with 14:42.1. This court has held that forcible rape is merely a lesser degree of the crime of aggravated rape, permitting a responsive verdict, La.C.Cr.P. art. 814, subd. A(8) (as amended in 1975), to the charge of aggravated rape. State v. Drew, 360 So.2d 500 (La. 1978); State v. Fletcher, 341 So.2d 340 (La. 1976). The only distinction between aggravated and forcible rape is the degree of force employed and the extent to which the victim resists. State v. Turnbull, 377 So.2d 72 (La. 1979). Nevertheless, the jury is authorized to subject a guilty defendant to more severe punishment by convicting him of aggravated rape rather than forcible rape. The penalty for aggravated rape is life imprisonment with hard labor without parole, probation or suspension, and the *1085 maximum sentence which may be imposed for forcible rape is forty years at hard labor.
Evidently, it was the legislative aim to divide the continuum of acts of coerced sexual intercourse into two categories, aggravated rape and forcible rape, thereby assigning to the jury the function of fixing the range of permissible punishment for convicted offenders by returning a verdict which appropriately fits the crime and the degree of force employed. Accordingly, the question presented by the present case is whether any reasonable jury, viewing all of the evidence, in the light most favorable to the prosecution, could find beyond a reasonable doubt that the defendant actively desired to cause the specific results required by both the aggravated and forcible rape statutes and that the degree of force employed warranted punishment in the greater, rather than lesser, degree. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The evidence in this case is sufficient to warrant a jury's finding that defendant actively desired to commit an act of sexual intercourse without the victim's consent by preventing her resistance with a threat of great harm under circumstances where the victim reasonably believed resistance would have been futile. The victim testified that the defendant obtained entry to her apartment under false pretenses, seized her by the throat, clasped her mouth, said he wanted to make love, warned that he would kill her if she screamed, and dragged her toward a bedroom. She stated that he outweighed her about 130 pounds and was almost a foot taller.
The evidence does not constitutionally justify, however, the jury's election to return a verdict of aggravated rape rather than forcible rape.[3] Within the range of attempted coercive sexual acts, the offense in this case clearly falls among those involving a minimal use of force. Although the victim was frightened and perhaps disturbed psychologically, she was released substantially unharmed. The defendant abandoned his attempt for no reason other than a change of mind. He did not fondle the victim or subject her to any sexual indignity. The evidence viewed from the perspective most favorable to the prosecution does not support a finding beyond a reasonable doubt that the degree of force employed warrants punishment in the greater degree as attempted aggravated rape, rather than in the lesser degree as attempted forcible rape.
For the foregoing reasons, the defendant's conviction and sentence for attempted aggravated rape should be reversed. However, defendant is not entitled to be discharged or receive a new trial. Attempted forcible rape, a lesser included offense was necessarily found in this case by the jury. See State v. Byrd, 385 So.2d 248 (La. 1980). Accordingly, the case should be remanded with instructions to enter a judgment of conviction of attempted forcible rape and to impose a sentence for that crime. Upon resentencing the trial court should consider, among other pertinent factors, the less serious nature of the crime of attempted forcible rape and the extensive mitigating circumstances of the case, not the least of which was defendant's voluntary withdrawal from the attempt which in some jurisdictions constitutes a defense.

ON REHEARING
DENNIS, Justice.
We granted this rehearing to reconsider whether a rational trier of fact could have found the defendant guilty beyond a reasonable *1086 doubt of attempted aggravated rape.[1]
In interpreting the articles of the criminal code all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision. La.R.S. 14:3. Accordingly, we must consider the closely related offense of forcible rape, La.R.S. 14:42.1, in determining the meaning of aggravated rape under La.R.S. 14:42(2) and in considering whether the evidence is sufficient to support the conviction.
In order to attempt to commit a crime an offender must actively desire to cause the specific results required by a particular criminal statute and do or omit an act for the purpose of and tending directly toward the accomplishing of his object. La.R.S. 14:10, 27.
Accordingly, in order to commit attempted aggravated rape, an offender must actively desire to commit rape by (1) overcoming the victim's utmost resistance by force; (2) preventing the victim from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution; or (3) having anal or vaginal sexual intercourse with a victim under the age of twelve years.[2] La.R.S. 14:42.
It is clear that the evidence in this case was sufficient to warrant a finding that the defendant actively desired to engage in sexual intercourse and that he did an act for the purpose of and tending directly toward the accomplishing of his object. We think that it is equally clear, however, that the evidence in this case would not support a rational finding that defendant specifically intended to rape a victim under the age of twelve years or to overcome the victim's utmost resistance by force. The victim in this case, a mature woman, was well over the age of twelve. The evidence shows without dispute that the unarmed defendant never exerted great force and abandoned his attempt before encountering strenuous resistance for no reason other than a change of heart.[3] The evidence, thus, does not support a finding beyond a reasonable doubt that the defendant had an active desire to overcome the victim's utmost resistance by force. Consequently, the only form of aggravated rape which the defendant could have actively desired was that "[w]here the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution." La.R.S. 14:42(2).
The legal definition of this form of aggravated rape is virtually identical to that of forcible rape. There is no essential difference between the specific results required by each crime definition. Both require *1087 that the victim be prevented from resisting by threat of great harm under circumstances where the victim reasonably believes that resistance would be futile. Compare La.R.S. 14:42(2) with 14:42.1. This court has held that forcible rape is merely a lesser degree of the crime of aggravated rape, permitting a responsive verdict, La.C.Cr.P. art. 814, subd. A(8) (as amended in 1975), to the charge of aggravated rape. State v. Drew, 360 So.2d 500 (La. 1978); State v. Fletcher, 341 So.2d 340 (La. 1976). The only distinction between aggravated and forcible rape is the degree of force employed and the extent to which the victim resists. State v. Turnbull, 377 So.2d 72 (La. 1979). Nevertheless, the jury is authorized to subject a guilty defendant to more severe punishment by convicting him of aggravated rape rather than forcible rape. The penalty for aggravated rape is life imprisonment with hard labor without parole, probation or suspension, and the maximum sentence which may be imposed for forcible rape is forty years at hard labor.
We conclude, therefore, that it was the legislative aim to divide the continuum of acts of coerced sexual intercourse into two categories, aggravated rape and forcible rape, thereby assigning to the jury the function of fixing the range of permissible punishment for convicted offenders by returning a verdict which appropriately fits the crime and the degree of force employed. Accordingly, the question we are called upon to decide is whether any reasonable jury, viewing all of the evidence, in the light most favorable to the prosecution, could find beyond a reasonable doubt that the defendant actively desired to cause the specific results required by both the aggravated and forcible rape statutes and that the degree of force employed warranted punishment in the greater, rather than lesser, degree. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The evidence in this case is sufficient to warrant a jury's finding that defendant actively desired to commit an act of sexual intercourse without the victim's consent by preventing her resistance with a threat of great harm under circumstances where the victim reasonably believed resistance would have been futile. The victim testified that the defendant obtained entry to her apartment under false pretenses, seized her by the throat, clasped her mouth, said he wanted to make love, warned that he would kill her if she screamed, and dragged her toward a bedroom. She stated that he outweighed her about 130 pounds and was almost a foot taller.
The evidence does not constitutionally justify, however, the jury's election to return a verdict of aggravated rape rather than forcible rape.[4] Within the range of attempted coercive sexual acts, the offense in this case clearly falls among those involving a minimal use of force. Although the victim was frightened and perhaps disturbed psychologically, she was released substantially unharmed. The defendant abandoned his attempt for no reason other than a change of mind. He did not fondle the victim or subject her to any sexual indignity. The evidence viewed from the perspective most favorable to the prosecution does not support a finding beyond a reasonable doubt that the degree of force employed warrants punishment in the greater degree as attempted aggravated rape, rather than in the lesser degree as attempted forcible rape.
For the foregoing reasons, we reverse and set aside the defendant's conviction. However, defendant is not entitled to be discharged or receive a new trial. Forcible rape, a lesser included offense was necessarily found in this case by the jury. See State v. Byrd, 385 So.2d 248 (La. 1980). *1088 The conviction and sentence are reversed, the case is remanded with instructions to enter a judgment of conviction of attempted forcible rape and to impose a sentence for that crime. Upon resentencing, the trial judge is directed to duly consider, among other pertinent factors, the less serious nature of the crime of which defendant now stands convicted and the extensive mitigating circumstances of the case, not the least of which was defendant's voluntary withdrawal from the attempt which in some jurisdictions constitutes a defense.
CONVICTION OF ATTEMPTED AGGRAVATED RAPE SET ASIDE; SUBSTITUTION OF ATTEMPTED FORCIBLE RAPE CONVICTION ORDERED; REMANDED.
LEMMON, J., concurs in the result only and assigns reasons.
BLANCHE, and WATSON, JJ., dissent and assign reasons.
MARCUS, J., dissents for reasons assigned by BLANCHE, J.
LEMMON, Justice, concurring.
I concur in the decree, because the result of the vote by the members of this court dictates that defendant should be remanded for entry of a judgment of attempted forcible rape rather than discharged.
I initially voted with Justices Marcus and Blanche to affirm the conviction of attempted aggravated rape.[1] Justices Dixon, Calogero and Dennis viewed the evidence as insufficient, in terms of degree of force, to support a conviction of attempted aggravated rape, and they voted to set aside that judgment and remand for entry of a judgment of attempted forcible rape under State v. Byrd, 385 So.2d 248 (La.1980). Justice Watson also viewed the evidence as insufficient to support a conviction of attempted aggravated rape. However, since he does not subscribe to the Byrd rationale and since he viewed the evidence as sufficient only to establish a simple battery, he voted to discharge the defendant.
Thus, there was a clear concurrence of a majority of the court in the view that the evidence was at least sufficient to support a conviction of attempted forcible rape.[2] Nevertheless, there were initially not four votes either to affirm or to remand for entry of a judgment of attempted forcible rape. In order to attain a majority position and to prevent the possibility of defendant's being discharged, I changed my vote to concur in the decree (which in effect orders a reduction to attempted forcible rape), despite my continued view that the evidence supports the jury's verdict. I did so because (1) defendant is, in fact, guilty at least of attempted forcible rapethe jury implicitly so found, and the evidence supports that finding in the view of six members of this court, and (2) it would be a travesty of justice to discharge this convicted criminal when the evidence clearly supports his conviction on the lesser included offense.[3]

APPENDIX
We granted a rehearing primarily to consider whether the evidence was sufficient to support the conviction of attempted aggravated rape or was only sufficient to support a responsive verdict of guilty of attempted forcible rape.
On the evidence in this record, considered in the light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that defendant made threats of great and immediate bodily harm, with the specific intent to prevent the victim from resisting the intended act of non-consensual sexual intercourse, when he had the apparent power to *1089 execute the threats.[1] Therefore, the evidence supports a conviction of attempted aggravated rape.
The jury was instructed as to the elements of and penalties for both attempted aggravated and attempted forcible rape, and both offenses were listed as possible verdicts. Although the evidence would also support a conviction of attempted forcible rape, that choice of verdicts was for the jury to make. An appellate court should not "second guess" that choice.
This case is difficult because defendant withdrew before completing the rape, perhaps indicating that he never intended to carry out the threats that he had made (although he terrorized the victim by making her believe he would carry out the threats). Nevertheless, even if he voluntarily withdrew, he did so at a point in time after culpability for an attempt had already attached.[2] The offense of attempted aggravated rape had been completed when defendant made the threats, under circumstances indicative of apparent power of execution, with intent to prevent resistance.
The considerations relative to defendant's withdrawal were argued to the jury prior to the verdict (and to the judge prior to the sentence)[3]. It was the jury's function to choose which of the two verdicts to return, when both were supported by the evidence. It is the function of this court to determine whether the verdict chosen by the jury was supported by the evidence and not to substitute our choice of verdicts for the choice of a unanimous jury.
BLANCHE, Justice (dissenting).
I respectfully dissent. It is the jury's function to review the testimony and evidence and to render a just verdict. Our role is to determine if that verdict is supported by the evidence. This writer would affirm the defendant's conviction and quotes from the original opinion as follows:
"The words and actions of defendant fulfill the requirements of LSA-R.S. 14:27, in that, by using physical force upon her after making known to her that he intended to commit rape and especially by forcing her toward the bedroom for the purpose of committing the rape he committed "an act for the purpose of and tending directly toward the accomplishing of his object" (aggravated rape). The record presents ample evidence for the jury's verdict."
WATSON, Justice, dissenting.
Defendant used the pretext of needing change to gain entrance to the apartment of the complaining witness. Parish told her he wanted to make love to her. When she appeared frightened, he placed his hand over her mouth to quiet her. Parish threatened to kill her if she screamed when he removed his hand. After she nodded to show acquiescence, he removed his hand, and she verbally consented to sexual intercourse. The witness did not recall who first brought up the word rape, but said it was discussed. After considerable conversation, during which he urged her to undress and she stalled, defendant attempted to drag her into the bedroom. After tripping over some clothing stacked in the hallway, he apologized and voluntarily left the apartment. There is no question that the witness was terrified and slightly battered.
There was no sexual intercourse here. An attempt to commit a crime is defined in pertinent part in LSA-R.S. 14:27 as follows:
"A. Any person who, having a specific intent to commit a crime, does or omits *1090 an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
"B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended."
Defendant obviously wished to have sexual intercourse with the witness. However, the purported victim could not testify that Parish was the one who introduced the idea of rape. An attempted crime requires the specific intent to commit that crime, defined as follows:
"Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1).
Specific intent is a state of mind which may be inferred from the circumstances. State v. Williams, 383 So.2d 369 (La., 1980). The evidence here establishes a specific intent to have sexual intercourse but not the intent to have intercourse without the victim's consent. Although she believed he intended to rape her, defendant's apologetic withdrawal negates any specific intention on his part to do that. Compare People v. Frysig, 628 P.2d 1004 (Colo., 1981).
Even if defendant had intended rape, he freely and voluntarily abandoned that purpose. See Bucklew v. State, 206 So.2d 200 (Miss., 1968). When he withdrew from the apartment, a specific criminal intent no longer existed if in fact it ever had. The law favors the voluntary retreat from criminal conduct. Wharton's Criminal Law, Vol. 1, Sec. 226 (12th Ed. 1932). See People v. Kimball, 109 Mich.App. 273, 311 N.W.2d 343 (1981). One can assault a woman with the intention of persuading her to sexual intercourse without a specific intent to rape unless the woman is under the age of consent. Perkins On Criminal Law at page 764 (2d Ed. 1969). "[T]he conduct of the defendant was indecent and insulting, and subjected him to a conviction for an assault and battery; but it falls short of showing a felonious intent." Jones v. State, 90 Ala. 628, at 631, 8 So. 383, at 384 (1890).
Defendant's conduct was deplorable and inexcusable but falls short of showing a specific criminal intent. The evidence is insufficient to convince a rational trier of fact that defendant beyond a reasonable doubt had specific intent to rape. The defendant committed simple battery but this is not a responsive verdict to the crime of attempted aggravated rape. Therefore, the conviction and sentence should be reversed.
I respectfully dissent.
NOTES
[*] Judges Cecil C. Cutrer, Jimmy M. Stoker and Ned E. Doucet, Jr., of the Court of Appeal, Third Circuit, participated in this decision as Associate Justices ad hoc, joined by Chief Justice John A. Dixon, Jr., and Associate Justices Pascal F. Calogero, Jr., James L. Dennis and Jack C. Watson.
[1] Assignment of error Number 2 was not briefed or argued by the defendant; thus, it is considered abandoned on appeal. State v. Kenner, 384 So.2d 413 (La.1980).

Assignments of error Numbers 1, 3, 4, 5, 6 and 7 present no reversible error, nor do they involve legal issues not governed by clearly applicable legal principles. Their disposition is noted in an appendix attached to this opinion, which remains a part of the record of this case, but will not be published with this opinion.
[1] La.R.S. 14:42 provides:

Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) Where the victim resists the act to the utmost, but whose resistance is overcome by force; or
(2) Where the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution; or
(3) Where the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
[2] Abandonment of an attempt to commit a crime where there is no outside cause is a defense in some jurisdictions. Minn.Stat.Ann. § 609.17(3) (1963); Fla.Stat.Ann. § 777.04(5)(a) (1974); Sparkman v. State, 84 Fla. 151, 92 So. 812 (1922). See also Wis.Stat.Ann. § 939.32 (1955); Model Penal Code § 5.01(4).
[3] The trial judge correctly instructed the jury as to the essential elements and penalties of each offense. Where discretion is afforded a jury in such a manner that it actually participates in the sentencing function it must be instructed as to the penalties. Cf. State v. Williams, 392 So.2d 619 (La. 1980); State v. Washington, 367 So.2d 4 (La. 1978); State v. Milby, 345 So.2d 18 (La. 1977); State v. Prater, 337 So.2d 1107, 1109, 1110 (La. 1976) (Tate, J., concurring) (Calogero, J., dissenting).
[1] In his application for rehearing, the defendant calls to our attention additional facts favorable to his case which were not recited in the original majority opinion: The victim could not recall who first brought up the word "rape" in the course of the defendant's visit. The defendant did not attempt to take off his pants, unzip his zipper, or get on top of the victim. He never touched her breasts or her genital area. Unquestionably, the evidence does establish these facts.
[2] La.R.S. 14:42 provides:

Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) Where the victim resists the act to the utmost, but whose resistance is overcome by force; or
(2) Where the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution; or
(3) Where the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
[3] Abandonment of an attempt to commit a crime where there is no outside cause is a defense in some jurisdictions. Minn.Stat.Ann. § 609.17(3) (1963); Fla.Stat.Ann. § 777.04(5)(a) (1974); Sparkman v. State, 84 Fla. 151, 92 So. 812 (1922). See also Wis.Stat.Ann. § 939.32 (1955); Model Penal Code § 5.01(4).
[4] The trial judge correctly instructed the jury as to the essential elements and penalties of each offense. Where discretion is afforded a jury in such a manner that it actually participates in the sentencing function it must be instructed as to the penalties. Cf. State v. Williams, 392 So.2d 619 (La. 1980); State v. Washington, 367 So.2d 4 (La. 1978); State v. Milby, 345 So.2d 18 (La. 1977); State v. Prater, 337 So.2d 1107, 1109, 1110 (La. 1976) (Tate, J., concurring) (Calogero, J., dissenting).
[1] My reasons for voting to affirm the conviction are stated in an appendix attached to this concurring opinion.
[2] Six members of the court (including the three who voted to affirm) believed the evidence at least supported a conviction of attempted forcible rape, which is a responsive verdict to attempted aggravated rape.
[3] This is the very reason the Byrd procedure was judicially adopted.
[1] With his hands on the victim's throat defendant threatened to kill her. Because of the disparity in size he had the apparent power to do so. It can hardly be suggested that the threat was not made with the intent to prevent resistance.
[2] Whether defendant voluntarily withdrew or was merely frustrated in his attempt, although not clear, is not dispositive of the question of culpability. See State v. Porter, 249 La. 784, 191 So.2d 498 (1966); People v. Staples, 6 Cal. App.3d 61, 85 Cal.Rptr. 589 (1970).
[3] Arguably, these considerations are more properly directed, on appeal, to a review of the excessiveness of the sentence. Indeed, the 20-year sentence imposed in this case is the maximum sentence for attempted forcible rape.