712 So.2d 230 (1998)
STATE of Louisiana, Appellee,
v.
Dalton D. SHIPP, III, Appellant.
No. 30562-KA.
Court of Appeal of Louisiana, Second Circuit.
April 8, 1998.
*232 Robert C. White, John M. Lawrence, Shreveport, Indigent Defender Board, for Appellant.
Richard Ieyoub, Attorney General, James M. Bullers, District Attorney, J. Schuyler *233 Marvin, Assistant District Attorney, for Appellee.
Before NORRIS, BROWN and PEATROSS, JJ.
BROWN, Judge.
This criminal appeal arises from the Twenty-Sixth Judicial District Court, Webster Parish, Louisiana, the Honorable Cecil P. Campbell, II, presiding. A jury found defendant Dalton Shipp guilty of one count of attempted second degree murder; one count of aggravated rape; and one count of aggravated kidnapping. The trial court sentenced defendant to 50 years at hard labor for attempted second degree murder and denied eligibility for good time; life imprisonment for aggravated rape; and life imprisonment for aggravated kidnapping, the sentences to run consecutively. From the conviction and sentence, Shipp appeals urging five assignments of error. We affirm.

FACTS
During the late evening hours of May 19, 1996 in Minden, Louisiana, victim, Cherie Shipp, returned from washing clothes at her cousin's home. Ms. Shipp had separated from her husband, the defendant, and was residing at her sister's apartment. The cousin, LaShonda Winn, carried the clothes because Ms. Shipp had recently suffered severe leg injuries in a car accident and was on crutches. Defendant awaited Ms. Shipp inside the apartment, having been let in by Ms. Shipp's sister, LaCheen Gates. Defendant had paged Ms. Shipp five times that day, all to which she did not respond.
Defendant asked to speak outside with Ms. Shipp about reconciling. She agreed and the two went outside, standing near defendant's car. Ms. Shipp refused defendant's requests for her to leave with him. She laid her crutches against the car and sat down in the passenger seat of defendant's car with her legs positioned outside the car. The two continued to argue about her refusal to leave with him. Defendant then proceeded to walk around the car to the passenger side and put the crutches in the backseat. He started the car and as Ms. Shipp protested and unsuccessfully reached for her crutches, backed out of the parking space, exiting the complex with Ms. Shipp's legs still dangling out of the car. Ms. Shipp testified that she demanded that defendant take her back to the apartment, to which he repeatedly asked, "Why don't you love me anymore." Ms. Shipp's sister witnessed the kidnapping from an apartment window and called the police.
Defendant drove to his home in Sibley. After Ms. Shipp refused to exit the car, defendant punched her in the face. Ms. Shipp testified that her jaw felt like it had been broken. Defendant carried her into the house with his hand placed over her mouth as she kicked and screamed. Once inside the residence, defendant tore off her shorts and carried her to a bedroom where he took off the rest of her clothes and raped her, telling her, "Now you know how sluts and whores feel."
Defendant then heard the officers knock at the door. He walked to the living room and returned with a shotgun. He pointed the gun at himself. Ms. Shipp pleaded with him not to kill himself. Defendant then pointed the gun at Ms. Shipp and shot her in the chest, then turned the gun on himself, shooting himself in the chest area. Ms. Shipp managed to stumble out of the residence, completely nude, holding her hand over a large gaping gunshot wound. She immediately told Webster Parish Sheriff's Deputy Steve Cropper, "Steve, Buddy raped me, he shot me, then he shot himself." A suicide note in defendant's handwriting was discovered in the bedroom. Ms. Shipp testified that the note was written prior to the time of defendant's attack on her.

DISCUSSION

Motion to Quash.
Defendant asserts that the charges were improperly joined in a single three-count indictment and that the trial court erred by refusing to sever them. He asserts that he was deprived of the right to a fair trial by having to defend himself against all the charges in a single indictment *234 tried together, the combination of which confused the jury.
La.C.Cr.P. art. 493 provides:
Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.
The trial court has discretion to order separate trials when two or more offenses have been improperly joined to the detriment of the defendant or the state. See La. C.Cr.P. art. 495.1. However, a motion for severance is addressed to the sound discretion of the trial court, and the ruling should not be disturbed on appeal absent a showing of abuse of discretion. State v. Jeffers, 623 So.2d 882 (La.App. 2d Cir.1993).
Defendant was charged by grand jury indictment with one count of aggravated kidnapping, one count of aggravated rape, and one count of attempted second degree murder. All three crimes were committed consecutively upon the same victim on the same night in question. All three crimes charged in the three count indictment are triable by the same mode. The three crimes are all necessarily "of the same character." Each crime was compartmentalized by its time frame and not confused with the occurrence of the other crimes. The crimes were part of a continuous criminal transaction that occurred over a period of approximately one hour. The crimes occurred consecutively: first, defendant kidnapped the victim; he raped her; then he attempted to kill her. The primary witness was the victim herself. Following detailed instructions from the trial court, the jury was given three verdict forms and it later returned three separate verdicts. In short, the record is devoid of any evidence that defendant was prejudiced by the joinder of the offenses.
A defendant in any case bears a heavy burden when alleging prejudicial joinder of offenses as grounds for a motion to sever. Factual rather than conclusory allegations are required. State v. Davis, 92-1623 (La.05/23/94), 637 So.2d 1012, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359. The trial court did not abuse its great discretion by refusing to sever the offenses.

Rebuttal Evidence.
Defendant testified at trial. Defendant alleged that the victim was present when he showed up at her apartment that night. He testified that the victim shot him after the two had consensual sexual intercourse; that he only took the gun away from her and shot her in self-defense. Defendant asserted that he has never told anyone that he shot himself that night. Defendant testified that he had never conveyed this version of events to the police or anyone else prior to trial because, "I wasn't ready to talk yet."
Defendant urges that the trial court erred by permitting the rebuttal testimony of Shreveport Police Officers Anita Chambers and Craig Ivy.[1] Officer Chambers testified that she is the intake officer at the Shreveport City Jail. As part of her duty, Officer Chambers searches incoming arrestees and interviews them concerning their medical and suicide histories. Chambers testified that defendant responded affirmatively when asked had he ever attempted suicide, dating the attempt as May 1995. Defendant's gunshot wound in this incident occurred in May 1996. Officer Ivy confirmed Officer Chambers' recollection of defendant's revelation. Defense counsel objected contemporaneously to their testimonies.
Rebuttal evidence is that which "has become relevant or important only as an effect of some evidence introduced by the other side." State v. Smith, 120 La. 530, 45 So. 415 (1908). Proper rebuttal evidence is offered to explain, repel, counteract or disprove facts given in evidence by an adverse party. State v. Deboue, 552 So.2d 355 (La. *235 1989), cert. denied, 498 U.S. 881, 111 S.Ct. 215, 112 L.Ed.2d 174 (1990).
The state is allowed to present rebuttal evidence for the reason that it is required to present its case first, and cannot anticipate the exact nature of the defense. State v. Williams, 445 So.2d 1171 (La.1984); State v. Monroe, 205 La. 285, 17 So.2d 331 (La.1944). However, it is well-settled that the state may not reserve part of its case-in-chief for rebuttal testimony after the defense has rested. State v. Hatter, 350 So.2d 149 (La.1977).
The trial court held that the testimonies elicited from the rebuttal witnesses were offered to refute testimony by defendant that the victim shot him, and to refute the defendant's various accounts of what he recollected happened that night. The state rebutted the veracity of this testimony through the testimony of LaShonda Winn, Anita Chambers and Craig Ivy. The state did not attempt to reserve any part of its case in chief in order to surprise the defendant, but simply presented testimony which directly contradicted defendant's evidence. Thus, it was proper for the trial court to permit the rebuttal testimony under these circumstances, because its purpose "was to disprove the defense and contradict the defense witnesses, rather than to prove the State's case." State v. Hatter, 338 So.2d 100 (La.1976).

Dr. Seiden's Report.
Defendant entered a plea of not guilty and not guilty by reason of insanity. Dr. George Seiden was appointed to a sanity commission and in accordance with the law filed a report of his examination. Defendant did not present evidence of insanity at the trial.
Defendant testified that a friend had given him the shotgun to get rid of "varmints and stuff in my trash." On cross-examination defendant was asked and admitted that he told Dr. Seiden that he took the shotgun from a friend approximately one month before the incident that resulted in these charges. No objection was made to the question. The friend, Tracy McCann, had previously testified that he had reported the shotgun missing. Another question regarding what defendant told Dr. Seiden about the shotgun was objected to and the objection was sustained. In his closing argument, the prosecutor stated, "Do you think Dr. Seiden was lying when he typed this report out?" Dr. Seiden did not testify. Defendant raised the issue again in a Motion for Post-Verdict Judgment of Acquittal.
In Felde v. Blackburn, 795 F.2d 400 (5th Cir.1986), the United States Fifth Circuit Court of Appeal held that statements made by defendant to a psychiatrist during a court ordered sanity hearing were admissible for impeachment purposes despite the absence of a Miranda warning. One of the primary objectives of our system of justice is to determine the truth. This objective would not be served if a defendant could take the witness stand and lie under oath and be insulated from inculpatory statements. See Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).
While the state would clearly have been better served if Dr. Seiden had testified to the voluntariness of defendant's statements, defendant presented no proof that suggested involuntariness or falsity on the part of Dr. Seiden regarding the interview or the answers adduced from the interview. Whether defendant took the shotgun or was given the shotgun was not significant in the events of the day in question. Considering its minor importance and the failure of the defense to object, if error, it was harmless.

Motion for Post-Verdict Judgment of Acquittal.
The question of sufficiency of evidence is properly raised by a motion for post-verdict judgment of acquittal. La.C.Cr.P. art. 821; State v. Edwards, 25,963 (La.App.2d Cir. 05/04/94), 637 So.2d 600. Defendant filed such a motion, which the trial court denied.
La.C.Cr.P. art. 821 provides that a motion for post-verdict judgment of acquittal shall be granted only if the court finds the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. That is a question of legal sufficiency. State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La.1992).
*236 Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La. App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988).
This court addressed the elements of an aggravated kidnapping in State v. Foster, 26,143 (La.App.2d Cir. 12/09/94), 647 So.2d 1224. The state can prove the defendant committed the offense of aggravated kidnapping by showing that he forcibly seized and carried a person from one place to another with the intent to force the victim to grant any advantage or immunity in order to secure a release of the person under the offender's control. La. R.S. 14:44. In this context, "the word `advantage' means gain, benefit, profit, superiority or favored position; the noun `immunity' means freedom or exemption from penalty, burden, duty or evil." State v. Edwards, 287 So.2d 518 (La. 1973). In determining whether an aggravated kidnapping offense occurred, the crucial question is whether the defendant sought to gain an advantage or immunity, by playing upon the victim's fear and hope of eventual release, in order to gain compliance with his demands. See State v. Arnold, 548 So.2d 920 (La.1989). The element of the crime aggravated kidnapping, requiring the kidnapper to force the victim to grant an advantage or immunity in order to secure his release, is met by evidence of the kidnapper's intent to extort the advantage or immunity by playing upon the victim's hopes of release. See Id. The seizure of a person with the intent to commit rape satisfies the requirement that the perpetrator has the intent to force the victim to give up anything of apparent present value. State v. Rault, 445 So.2d 1203 (La.1984), writ denied, 469 U.S. 873, 105 S.Ct. 225, 83 L.Ed.2d 154; State v. Winn, 412 So.2d 1337 (La.1982); State v. Sonnier, 402 So.2d 650 (La.1981), writ denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412.
Here, defendant asserts that the "forcible seizing" element of the offense of aggravated kidnapping was not met by the state and that there was no evidence that he intended to force the victim to give up anything of apparent or prospective value. Cherie Shipp testified that she needed crutches to move around because her leg was in a cast as the result of a car accident. As she sat down in the passenger seat of defendant's car to rest, she verbally rebuffed his requests for her to go to the store with him and to go to his home to show her a ring he claimed to have bought for her. Defendant took her crutches and threw them in the backseat of his car and proceeded to drive away with the victim, her legs still protruding from the unclosed car door. Upon arrival in Sibley, defendant punched Ms. Shipp in the face and carried her from the car into the house as she kicked and screamed in protest. Immediately upon entry into the house, defendant tore off Ms. Shipp's shorts. He then carried her to a bedroom where he proceeded to remove the rest of her clothes and rape her. The seizure element of aggravated kidnapping was met by those two instances.
Defendant further argues that the evidence proved a forcible rape but not an aggravated rape and suggests that the sexual intercourse was consensual.
The distinction between aggravated and forcible rape was addressed in State v. Parish, 405 So.2d 1080 (La.1981). The Louisiana Supreme Court concluded that the only distinction between aggravated and forcible *237 rape is the degree of force employed and the extent of the victim's resistence; that it was the legislative aim to divide the acts of coerced sexual intercourse into two categories, thereby assigning to the fact finder the function of fixing the range of permissible punishment for convicted offenders by returning a verdict which appropriately fits the crime and the degree of force employed. The standard of appellate review in such cases is:
... whether any reasonable jury [fact finder] viewing all the evidence, in the light most favorable to the prosecution, could find beyond a reasonable doubt that the defendant ... [caused] the results required by both the aggravated and forcible rape statutes and that the degree of force employed warranted punishment in the greater, rather than lesser, degree ... State v. Parish, supra. [Bracketed material added.]
Applying the standard of review to the instant case, it is clear that the evidence supports a finding of guilty of aggravated rape. Ms. Shipp testified that she was carried into defendant's house, kicking and screaming, where he tore off her clothes and raped her. After being shot by defendant, she emerged from the home nude and bloodied with a gaping wound to her chest. Sheriff's Deputy Steve Cropper testified that she told him, as she received first aid, that defendant had raped her, shot her, and shot himself.
Defendant argues that the trial court erred in not providing "not guilty by reason of insanity" on the verdict form. The charge to the jury and the jury instructions contained no reference or instruction regarding the plea of not guilty by reason of insanity. La.C.Cr.P. art. 652 places the burden of proof of establishing the defense of insanity upon the defendant. Defendant's failure to raise a contemporaneous objection to an alleged erroneous jury charge precludes appellate review of the alleged error. La.C.Cr.P. art. 801.

Excessive Sentence.
The trial court sentenced defendant to life at hard labor on each count of aggravated rape and aggravated kidnapping. The trial court imposed a sentence of 50 years at hard labor for attempted second degree murder. The trial court ordered the sentences be served consecutively. On appeal, defendant requests that this court impose the sentences concurrently.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La. 1983). Thus, an appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D); State v. Smith, supra; State v. Lanclos, 419 So.2d 475 (La.1982).
La.C.Cr.P. art. 883 provides that:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.
In this case, the trial court provided comprehensive oral reasons that reflect careful consideration of the provisions of La.C.Cr.P. art. 894.1. The trial court noted the severity of the offenses and defendant's lack of remorse. The trial court found no mitigating circumstances or justification of his conduct. The court noted that defendant perjured himself at trial by making up various stories: first, that the crime was the result of a suicide pact between himself and the victim and second, at trial, claiming that the victim *238 actually shot him before he turned the gun on her in self-defense.
The second prong of the appellate analysis concerns constitutional excessiveness. State v. Smith, supra. Defendant asserts that the trial court erred in imposing consecutive terms of incarceration. It is within a trial court's discretion, however, to order sentences to run consecutively rather than concurrently. State v. Coates, 27,287 (La.App.2d Cir. 09/27/95), 661 So.2d 571, writ denied, 95-2613 (La.02/28/96), 668 So.2d 365; State v. George, 26,867 (La.App.2d Cir. 04/05/95), 652 So.2d 1382, writ denied, 95-1151 (La.09/29/95), 660 So.2d 855. Concurrent sentences arising out of a single cause of conduct are not mandatory. State v. Pickett, 628 So.2d 1333 (La.App. 2d Cir.1993), writ denied, 637 So.2d 476 (La.1994), and consecutive sentences under those circumstances are not necessarily excessive. State v. Ortego, 382 So.2d 921 (La.1980), cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980).
Convictions and sentences AFFIRMED.
NOTES
[1] Defendant does not object on appeal to the rebuttal testimony of LaShonda Winn that defendant was awaiting Ms. Shipp at her apartment when they returned from washing clothes.