NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-1403

STATE OF LOUISIANA

VERSUS

MERVIN LATIGUE

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 15761-04
HONORABLE ROBERT LANE WYATT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

OSWALD A. DECUIR
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Elizabeth A. Pickett, and J. David Painter, Judges.

**AFFIRMED AS AMENDED AND REMANDED.**

Sherry Watters
Louisiana Appellate Project
P. O. Box 58769
New Orleans, LA 70158-8769
(504) 723-0284
Counsel for Defendant/Appellant:
    Mervin Latigue

John F. DeRosier
District Attorney
P. O. Box 3206
Lake Charles, LA 70602-3206
(337) 437-3400
Counsel for Plaintiff/Appellee:
    State of Louisiana

**Carla S. Sigler**
**Assistant District Attorney**
**1020 Ryan Street**
**Lake Charles, LA 70601**
**(337) 437-3400**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**DECUIR, Judge.**

Defendant, Mervin Latigue, was convicted of aggravated burglary, in violation of La.R.S. 14:60; attempted aggravated rape, in violation of La.R.S. 14:27 and 14:42; and aggravated battery, a lesser included offense to the charge of attempted second degree murder, in violation of La.R.S. 14:27 and 14:30.1. The trial court sentenced Defendant to serve fifteen years at hard labor for the aggravated burglary conviction, ten years at hard labor without benefits for the attempted aggravated rape conviction, and five years at hard labor for the aggravated battery conviction. The sentencing court then gave Defendant credit for time served and ordered the sentences to run concurrently.

Defendant now appeals arguing that the State failed to meet its burden of proving that Defendant committed attempted aggravated rape.

**FACTS**

At trial, the prosecution first called S.B. as a witness.[1] S.B. testified that she has been close friends with Defendant's sister for twenty-five years. Because of S.B.'s relationship with Defendant's sister, Defendant had been a friendly acquaintance. Through comments Defendant made, S.B. became aware that Defendant was interested in her.

On July 10, 2004, S.B. went out with a couple of her friends, leaving her son, one-and-a-half-year-old R.B., at home in the care of her daughter, sixteen-year-old C.B. Around 1:30 a.m., S.B. received a phone call from a friend who told her something had happened. When S.B. arrived at the friend's house a block away from her own home, C.B. and R.B. were there. Although C.B. said that she was okay, her shirt was bloody, her eyes were bloodshot, her neck was marked, and she was visibly shaking.

_____

[1]In accordance with La.R.S. 46:1844, initials have been used in order to protect the identity of the minor victim.

After speaking with C.B., S.B. went home. S.B.'s friend had called the police, and they arrived on the scene shortly after S.B. The officers also told S.B. to remain outside while they looked inside the house for Defendant, who C.B. had identified as her attacker. Prevented from entering her domicile, S.B. returned to her children who were still at her friend's house. One of the detectives accompanied S.B. and C.B. to the hospital so that C.B. could be examined. Once the investigation was complete, S.B. returned home. She noticed that a window had been broken, its screen had been torn, and things had been knocked down onto the floor. Further examination revealed that the bed had been moved and the sheets disheveled.

C.B. confirmed that she was sixteen on July 10, 2004. On that evening, her mother had gone out. C.B. had been taking care of her brother, R.B., and had allowed him to sleep in her bed with her. C.B. awoke when she felt a chain loop around her neck. C.B. recognized Defendant as he began strangling her and pulling her onto the floor. C.B. stated that Defendant had pulled her off the end of the bed and that he had pushed her into a position where they were still standing, but she was bending with her face down on the bed. While behind C.B. in that position, Defendant tugged her shorts down midway as he continued to choke her. Though startled, C.B. fought Defendant as he strangled her. C.B. bit Defendant's hand during the struggle. C.B. continued to fight until she lost consciousness. C.B. also fought to prevent Defendant from pulling down her shorts because she was sure that he was going to rape her. She thinks that she was successful in fighting him off, but she was unsure because she passed out.

When C.B. awoke on the floor, she saw that R.B. had gotten out of the bed and had crawled onto the floor nearby. C.B. also noticed that Defendant was sleeping in the bed. C.B. took R.B. and went to her next door neighbor's house. When the next

2

door neighbor did not come to the door quickly enough, C.B. took R.B. to another neighbor's house.

After speaking with the police, C.B. went to the hospital where a nurse examined her. The exam revealed that Defendant had not raped her. Otherwise, C.B. had neck injuries and marks from being strangled with the chain and bloodshot eyes from her loss of oxygen.

Richard Gott, a drugstore manager, testified that he was working on July 10, 2004, when a store clerk called him to handle a problem with a customer. Defendant had opened and consumed beer in the store, but he refused to pay for it. When Mr. Gott confronted Defendant, Defendant told him that he wanted to go to jail. After the police arrived and had read Defendant his rights, Defendant told them that he had broken into a house and attacked a girl, but she had beat him up and gotten away.

Tammy Bailey, a nurse at Lake Charles Memorial Hospital, testified that she is a sexual assault examiner. Ms. Bailey was called from home to examine C.B. Ms. Bailey recounted what C.B. had told her, "She said that he came in, he put a chain around her neck, pulled her out of the bed, and began to strangle her and tried to pull her pants down." There was no evidence of genital trauma.

The State also introduced Defendant's videotaped confession into evidence. Defendant told his interviewers that he had been trying to date S.B., but she rejected him even though he bought her things. When Defendant drank alcohol and got high that evening, he became very angry at S.B.'s ill treatment. Defendant went to her house and became even angrier because she was not there; her car was gone.

Defendant took a chain off of S.B.'s fence; he wanted to choke her with it. Defendant thought that he might have killed her if she had been home. Since S.B. was not there to strangle, Defendant decided to choke her daughter instead.

3

Defendant entered the house by breaking out the back window and crawling through. Defendant cut himself on the glass, but he did not feel any pain because he was high.

C.B. was sleeping in the bed with her brother when Defendant entered the room. Defendant wrapped the chain around C.B.'s neck and began to strangle her. Defendant dragged C.B. off the bed and choked her unconscious. Defendant recalled struggling with C.B., but did not remember her biting him. Once she was unconscious, Defendant remembered putting her back on the bed and leaving the house. Defendant did not remember whether he had pulled C.B.'s shorts down, but denied entering the house with the intention of raping her. Defendant also denied falling asleep on the bed; he was sure that C.B. was on the bed when he left.

**ERRORS PATENT**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are two errors patent involving the sentence imposed for attempted aggravated rape.

Although the minutes of sentencing indicate that the trial court imposed the attempted aggravated rape sentence at hard labor, the transcript of sentencing indicates that the trial court failed to specify whether the sentence imposed for that offense was to be served at hard labor. A sentence imposed for attempted aggravated rape is necessarily punishable at hard labor. La.R.S. 14:42 and 14:27. Accordingly, we amend the Defendant's sentence to affirmatively reflect that it is to be served at hard labor. *State v. Loyden*, 04-1558 (La.App. 3 Cir. 4/6/05), 899 So.2d 166. The district court is directed to make an entry in the minutes reflecting this amendment.

Likewise, there is no indication in the record that the trial court advised the Defendant of the prescriptive period for filing post-conviction relief. Louisiana Code of Criminal Procedure article 930.8 requires the trial court to advise a defendant of

4

the prescriptive period at sentencing. Accordingly, the case is remanded and the trial court instructed to inform Defendant of the La.Code Crim.P. art. 930.8 prescriptive period by sending appropriate written notice to Defendant within ten days of the rendition of this opinion and to file written proof that Defendant received the notice in the record.

## DISCUSSION

Defendant argues that "[t]he State failed to prove the specific intent to have sexual intercourse necessary for attempted aggravated rape beyond a reasonable doubt, in the light most favorable to the prosecution." Defendant contends that the State failed to meet its burden of proof because there was no evidence of genital or sexual contact, no evidence of an attempt to make sexual contact, and no threat or verbalization of intent to have sexual contact. Based thereon, Defendant asks this court to find him not guilty. Alternatively, Defendant asks this court to find that the prosecution only proved attempted forcible rape.

> In evaluating the sufficiency of the evidence to support a conviction, a reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Captville*, 448 So.2d 676, 678 (La.1984).

*State v. Leger*, 05-0011, p. 91 (La. 7/10/06), 936 So.2d 108, 170.

> This standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact-finder. *State v. Robertson*, 96-1048, p. 1 (La.10/4/96), 680 So.2d 1165; *State v. Lubrano*, 563 So.2d 847, 850 (La.1990). A reviewing court may intervene in the trier of fact's decision only to the extent necessary to guarantee due process of law. *State v. Mussall*, 523 So.2d 1305, 1310 (La.1988).

*State v. Pigford*, 05-0477, p. 6 (La. 2/22/06), 922 So.2d 517, 521.

In 2004, aggravated rape was defined, in pertinent part, as:

5

> [A] rape committed . . . where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
> > (1) When the victim resists the act to the utmost, but whose resistance is overcome by force;
>
> > . . . .
>
> > (3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.

La.R.S. 14:42; 2003 La. Acts No. 795, § 1. Attempt occurs when any person specifically intends to commit a crime, and he does or omits an act for the purpose of committing the crime when the act tends directly toward the accomplishment of his objective. La.R.S. 14:27(A).

In the instant case, Defendant admitted that he had attacked C.B., but he had been too high to say much of anything. Instead, Defendant demonstrated his intent to have sex by wrestling C.B. into a vulnerable position and pulling down her shorts. C.B. resisted to her utmost by fighting, but Defendant overcame her resistance by throttling her unconscious. Additionally, Defendant used a dangerous weapon to commit the crime; he used a chain to strangle C.B. The force implemented by Defendant left bruises on C.B.'s throat and ruptured blood vessels in both of her eyes.

Defendant cites to *State v. Trackling*, 609 So.2d 206 (La.1992) in support of his complaint. In *Trackling*, the supreme court found that there was insufficient evidence to prove that the defendant had committed attempted aggravated rape because "[t]he record is bereft of evidence that the sexual act the defendant attempted to accomplish was either vaginal or anal intercourse." *Id*. at 208. During the attack, Trackling stated his intention to have the victim perform oral sex on him and also testified at trial that oral sex was his intent. At the time of the offense, oral sex was not included in the aggravated rape statute. La.R.S. 14:42; 1984 La. Acts No. 579,

6

§ 1. Even though the *Trackling* court noted that evidence showing a defendant forcibly grabbed a victim while announcing his intent to have sexual intercourse was sufficient to support an attempted rape conviction, the supreme court did not limit proof of specific intent to announcement. *Trackling*, 609 So.2d at 206.

Defendant also cites to *State v. Parish*, 405 So.2d 1080 (La.1981) in support of his argument. In *Parish*, the supreme court, on rehearing, reduced the defendant's conviction for attempted aggravated rape to attempted forcible rape. The supreme court determined that, in order to have proven the offense, the State must have introduced evidence showing that Parish had the specific intent to commit aggravated rape and that he performed an act for the purpose of and tending directly toward accomplishing aggravated rape. *Id*.

The instant case is distinguishable from *Parish*. Parish declared his intent to have sex. Parish used minimal force, initially grabbing his victim by the throat, but releasing her throat before he dragged her toward her bedroom. As he never fondled or groped his victim, Parish only had minimal contact with his victim. The victim in *Parish* did not physically resist, fight to get away, or physically try to stop the attack. Defendant in the instant case used a dangerous weapon, used a much greater amount of force to subdue a struggling victim, and actually tried to disrobe C.B.

In contrast, the facts of Defendant's case are closer to the facts found in *State v. Williams*, 490 So.2d 255, 261 (La.1986), *cert. denied*, 483 U.S. 1033, 107 S.Ct. 3277 (1987). Contrary to Defendant's arguments, the *Williams* court found evidence sufficient to support attempted aggravated rape where the defendant did not verbalize his intent and where the defendant did not grope the victim's anus or genitals. The evidence presented at trial showed that the victim had entered her bathroom; and after sitting on the toilet, she noticed Williams standing with his pants off behind the

7

bathroom door. When the victim began to scream, Williams locked the bathroom door and stabbed her with a knife. The supreme court determined that "[t]he most reasonable conclusion to be drawn from the facts and circumstances of the case would support a finding that the defendant attempted to commit aggravated rape on" the victim. *Id*. at 261.

Under the reasoning in *Williams*, the trial court could have found proof beyond a reasonable doubt that the State proved Defendant attempted to commit aggravated rape when viewing the evidence in the light most favorable to the prosecution. Accordingly, Defendant's assignment of error is without merit.

## DECREE

Defendant's conviction is affirmed. We amend the sentence imposed for attempted aggravated rape to affirmatively reflect that it is to be served at hard labor. The district court is directed to make an entry in the minutes reflecting this amendment. Additionally, we remand the case with the instructions that the trial court inform the Defendant of the La.Code Crim.P. art. 930.8 prescriptive period by sending appropriate written notice to Defendant within ten days of the rendition of this opinion and the district court is to file into the record written proof Defendant received the notice.

**AFFIRMED AS AMENDED AND REMANDED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules, Courts of Appeal.