587 So.2d 193 (1991)
STATE of Louisiana
v.
John Daniel CORLEY.
No. CR90-1215.
Court of Appeal of Louisiana, Third Circuit.
October 2, 1991.
Writ Denied January 10, 1992.
*194 J. Michael Small, Timothy Meche, Alexandria, for defendant-appellant.
Don Burkett, Dist. Atty., Many, for plaintiff-appellee.
Before GUIDRY, YELVERTON and KNOLL, JJ.
GUIDRY, Judge.
John Daniel Corley was indicted for the second degree murder of his wife, Glenda Corley. After trial by jury, defendant was found guilty as charged and sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. Defendant appeals his conviction urging ten assignments of error. Finding reversible error in one of the assignments, we pretermit consideration of the other assignments.
The evidence adduced at trial established that defendant killed Glenda Corley in the early morning hours of July 21, 1989. Glenda's death was caused by the combination of a severe beating and strangulation. Defendant sought to exculpate himself from criminal responsibility for the killing by asserting the defenses of intoxication and insanity. Specifically, defendant offered evidence in an attempt to establish that, on the night of his wife's death, he had consumed such a large quantity of alcohol that he could not form the specific intent necessary to commit second degree murder and that he suffered from a mental disease caused by prolonged alcohol abuse which prevented his distinguishing right from wrong.
Dr. Joe Ben Hayes, a psychiatrist, testified on behalf of defendant. Subsequent to his arrest, defendant was treated by Dr. Hayes for alcoholism. Based on his treatment and diagnosis of defendant, Dr. Hayes was of the opinion that because of defendant's intoxication at the time of the incident, defendant could not form the specific intent to kill or inflict great bodily harm on the victim. According to Dr. Hayes, defendant was in a blackout at the time of his wife's death due to alcoholism. Defendant was also suffering from an organic brain syndrome from toxic alcohol intake. Dr. Hayes opined that defendant's mental disease prevented him from distinguishing right from wrong at the time of his wife's death.
Dr. Paul Ware, a psychiatrist and neurologist, was also called as a witness by defendant. Dr. Ware's testimony essentially corroborated Dr. Hayes' testimony.
The State offered evidence to rebut the defenses asserted by defendant.
*195 Dr. George Seiden, a psychiatrist, testified on behalf of the State. Dr. Seiden stated that after a person has an alcohol induced blackout, they cannot recall what they did during the blackout. However, Dr. Seiden opined that a loss of memory brought about by a blackout has nothing to do with intent. Dr. Seiden added that, during a blackout, a person is capable of making decisions, thus, that person has the capability of forming the intent to do so. Dr. Seiden studied defendant's psychiatric medical records and was of the opinion that defendant intended his actions and he knew right from wrong when he killed Glenda Corley.
In charging the jury on the element of specific intent, the trial court stated that "[a] person is presumed to intend the natural and probable consequences of his acts".
The due process clause of the Fourteenth Amendment prohibits the State from utilizing evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime. Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).
In Sandstrom, the court reversed defendant's conviction of "deliberate homicide" as a result of the trial court's instruction to the jury that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts". The court found that this particular instruction violated the defendant's right to due process of law under the Fourteenth Amendment requirement that the State prove every element of a criminal offense beyond a reasonable doubt. "Because Sandstrom's jury might have interpreted the judge's instruction as either shifting the burden of proving intent to defendant or creating a conclusive presumption of intent against defendant, the Supreme Court concluded that under either of the possible interpretations of the instruction, constitutional error would result." State v. Heads, 385 So.2d 230, 231 (La.1980).
The Louisiana Supreme Court in State v. Heads, supra, determined that the following jury instruction was "virtually identical" to that given in Sandstrom: "A man is presumed to intend the natural and probable consequences of his acts." The challenged jury instruction in the present case is "virtually identical" to the instruction given in the Heads case. Standing alone, we find the challenged language created an unconstitutional burden-shifting presumption concerning the element of intent.
However, inasmuch as the "jury charge taken as a whole might have explained the proper allocation of burdens with sufficient clarity that any ambiguity in the particular language challenged could not have been understood by a reasonable juror as shifting the burden of persuasion", Francis v. Franklin, 471 U.S. 307, 319, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344 (1985), we have considered the entire charge.
In reviewing the entire jury charge, we are mindful that "general instructions on the State's burden of persuasion and the defendant's presumption of innocence are not `rhetorically inconsistent with a conclusive or burden-shifting presumption,' because `[t]he jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to intent could be satisfied.'" Francis, supra, 471 U.S. at 319, 105 S.Ct. at 1974.
After careful review of the entire charge, we conclude that a reasonable juror could have understood the challenged instruction as creating a presumption which shifted to defendant the burden of persuasion on the element of intent and we further find that the charge read as a whole does not cure the error. Accordingly, we hold the challenged instruction given in this case unconstitutional.
Having concluded that the challenged instruction was constitutionally infirm, we next consider whether the instruction was harmless error. Recently in Yates v. Evatt, ___ U.S. ___, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991), the United States Supreme Court developed a methodology for reviewing courts to employ in analyzing the harmless error issue with respect to *196 jury instructions which violate Sandstrom. The court stated:
". . .
First, it must ask what evidence the jury actually considered in reaching its verdict. If, for example, the fact presumed is necessary to support the verdict, a reviewing court must ask what evidence the jury considered as tending to prove or disprove that fact.9 Did the jury look at only the predicate facts, or did it consider other evidence bearing on the fact subject to the presumption? In answering this question, a court does not conduct a subjective enquiry into the jurors' minds. The answer must come, instead, from analysis of the instructions given to the jurors and from application of that customary presumption that jurors follow instructions and, specifically, that they consider relevant evidence on a point in issue when they are told that they may do so.
Once a court has made the first enquiry into the evidence considered by the jury, it must then weigh the probative force of that evidence as against the probative force of the presumption standing alone. To satisfy Chapman's reasonable doubt standard, it will not be enough that the jury considered evidence from which it could have come to the verdict without reliance on the presumption. Rather, the issue under Chapman is whether the jury actually rested its verdict on evidence establishing the presumed fact beyond a reasonable doubt, independently of the presumption. Since that enquiry cannot be a subjective one into the jurors' minds, a court must approach it by asking whether the force of the evidence presumably considered by the jury in accordance with the instructions is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the presumption. It is only when the effect of the presumption is comparatively minimal to this degree that it can be said, in Chapman's words, that the presumption did not contribute to the verdict rendered.
Because application of the harmless-error test to an erroneous presumption thus requires an identification and evaluation of the evidence considered by the jury in addition to the presumption itself, we need to say a word about an assumption made in many opinions applying the Chapman rule, which state that the harmlessness of an error is to be judged after a review of the entire record. See, e.g., Delaware v. Van Arsdall, supra, 475 U.S. [673], at 681, 106 S.Ct. [1431], at 1436 [89 L.Ed.2d 674 (1986) ] ("[A]n otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt"); United States v. Hasting, 461 U.S. 499, 509, n. 7, 103 S.Ct. 1974, 1981, n. 7, 76 L.Ed.2d 96 (1983) ("Chapman mandates consideration of the entire record prior to reversing a conviction for constitutional errors that may be harmless"). That assumption is simply that the jury considered all the evidence bearing on the issue in question before it made the findings on which the verdict rested. If, on the contrary, that assumption were incorrect, an examination of the entire record would not permit any sound conclusion to be drawn about the significance of the error to the jury in reaching the verdict. This point must always be kept in mind when reviewing erroneous presumptions for harmless error, because the terms of some presumptions so narrow the jury's focus so as to leave it questionable that a reasonable juror would look to anything but the evidence establishing the predicate fact in order to infer the fact presumed.10 When applying a harmless-error analysis in presumption cases, therefore, it is crucial to ascertain from the trial court's instructions that the jurors, as reasonable persons, would have considered the entire trial record, before looking to that record to assess the significance of the erroneous presumption." (footnotes omitted)
Since intent was a primary issue in this case and because the erroneous presumption *197 may have so narrowed the jury's focus on the issue of intent, we are unable to say that the error was harmless. The instruction may have acted to deter the jury from considering all of the evidence adduced on the issue of intent. Yates v. Evatt, supra.

DECREE
For the reasons assigned, defendant's conviction is reversed and the sentence is set aside. This case is remanded to the trial court for a new trial in accordance with law.
REVERSED AND REMANDED.