938 So.2d 1147 (2006)
STATE of Louisiana, Appellee
v.
Donald David HANSON, Appellant.
No. 41,195-KA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 2006.
*1148 Christopher A. Aberle, Mandeville, for Appellant.
Paul J. Carmouche, District Attorney, Catherine M. Estopinal, Edward Brossette, Assistant District Attorneys, for Appellee.
Before WILLIAMS, STEWART and LOLLEY, JJ.
WILLIAMS, J.
A Caddo Parish Grand Jury returned an indictment charging the defendant, Donald David Hanson, with aggravated rape, in violation of LSA-R.S. 14:42. The matter proceeded to trial before a twelve-person jury which found the defendant guilty as charged. Thereafter, the trial court sentenced the defendant to serve the mandatory term of life imprisonment without benefit of parole, probation or suspension of sentence. The defendant has appealed. Finding no error, we affirm the defendant's conviction and sentence.

FACTS
On July 1, 2002, the 52-year old female victim, P.W.,[1] a resident of Texas, was vacationing in Shreveport. She visited Hollywood Casino, and when she left, she entered the elevator of the casino's parking garage with several other people. After leaving the elevator, P.W. realized that she had exited onto the wrong floor of the parking garage. She entered the stairwell to walk to the correct floor. While in the *1149 stairwell, P.W. heard footsteps. She looked over her shoulder and noticed a man approaching behind her, taking two steps at a time. She attempted to run, but the assailant grabbed her from behind, hit her head against the wall and placed his hand over her mouth. P.W. tried to escape by biting the assailant's hand and scratching his face and neck. The attacker placed his hand around her throat and held it so tightly that her feet were not touching the floor, and she began "gurgling." The attacker repeatedly pressed and released P.W.'s neck, and she lost consciousness at intervals. Throughout the attack, the assailant called her a "bitch" and a "whore" and told her, "I'm going to rape you, and I'm going to kill you."
The attacker then pulled P.W.'s pants down and, in fear, she defecated on herself. The assailant attempted to penetrate P.W.'s anus with his penis, but was unsuccessful because he was unable to achieve a full erection. He continued to tell her that he was going to rape her anally and then kill her. At that point, he forced his penis into P.W.'s mouth, warning her that he would kill her if she hurt him. After making another unsuccessful attempt to penetrate her anus, he penetrated her vagina. P.W. testified, "I felt like my life was on the line. He made it clear to me that he was going to kill me." She further stated that, throughout the attack, she begged the attacker to stop, screamed and "fought him with all I had." She stated that she lost her voice and could barely scream.
The attack ended when someone entered the stairwell. The assailant ran away, and P.W. left the parking garage to get help. She reported the incident to the casino's security officer, who called the police department. P.W. was able to provide a description of the attack, as well as a description of her assailant. She also informed the officers that she had scratched her assailant's facial area "pretty bad."[2]
Whitney Brimmer, the person who had entered the stairwell during the attack, also testified during the trial. He stated that he left the casino and entered the stairwell. As he proceeded up the stairs, he heard someone screaming for help. He testified that he looked up the stairwell and saw a woman lying face down on the concrete with a man on top of her. The woman's "pants were down below her ankles," and "she was struggling a lot." Brimmer ran out of the stairwell and reported the incident to the casino's security department.
Police officers immediately began circulating the area surrounding the casino. Within 15 minutes of the attack, the defendant was observed walking approximately one mile from the casino. The officers noticed that the defendant had fresh scratches on his face and neck and a bite mark on his hand. The clothing he was wearing fit the description of the assailant's clothing described by P.W.
Both P.W. and Brimmer positively identified the defendant as the assailant, and he was placed under arrest. Subsequent DNA testing revealed that the scrapings obtained from P.W.'s fingernails were consistent with a mixture of DNA from her and the defendant.[3]
*1150 The defendant was initially charged with forcible rape, in violation of LSA-R.S. 14:42.1. However, he was subsequently indicted by the grand jury with aggravated rape, in violation of LSA-R.S. 14:42.
At the jury trial, P.W., Brimmer and police officers testified regarding the above-related facts. Both P.W. and Brimmer identified the defendant in court as the perpetrator. At the conclusion of the trial, the defendant was convicted as charged of aggravated rape. The trial court denied the defendant's motions for new trial and post-verdict judgment of acquittal, and sentenced him to serve the mandatory term of life imprisonment without benefit of parole, probation or suspension of sentence. The defendant now appeals.

DISCUSSION
In his sole assignment of error, the defendant contends the evidence was insufficient to support a conviction of aggravated rape. He argues that the evidence only supported a conviction of forcible rape.
The question of sufficiency of evidence is properly raised by a motion for post-verdict judgment of acquittal. LSA-C.Cr.P. art. 821; State v. Howard, 31,807 (La.App. 2d Cir.8/18/99), 746 So.2d 49, writ denied, 1999-2960 (La.5/5/00), 760 So.2d 1190; State v. Edwards, 25,963 (La.App. 2d Cir.5/4/94), 637 So.2d 600. Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.), writ denied, 605 So.2d 1089 (La.1992).
LSA-R.S. 14:42, in pertinent part, defines aggravated rape as follows:
A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
* * *
LSA-R.S. 14:42.1 defines forcible rape as follows:
A. Forcible rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
(2) When the victim is incapable of resisting or of understanding the nature of the act by reason of stupor or abnormal condition of the mind produced by a narcotic or anesthetic agent or other controlled dangerous substance administered by the offender and without the knowledge of the victim.

*1151 * * *
In State v. Howard, supra, this Court addressed the distinction between the offenses of aggravated rape and forcible rape, stating:
Forcible rape is merely a lesser degree of the crime of aggravated rape and is a responsive verdict to that crime. The only distinction between aggravated and forcible rape is the degree of force employed and the extent to which the victim resists. However, the jury is authorized to subject a guilty defendant to more severe punishment by convicting him of aggravated rape rather than forcible rape.
Id. at 54. See also, State v. Price, 40,408 (La.App. 2d Cir.12/16/05), 917 So.2d 1201, writ denied, XXXX-XXXX (La.6/16/06), 929 So.2d 1284.
In State v. Parish, 405 So.2d 1080 (La. 1981), the supreme court concluded that it was the legislative aim to divide the continuum of acts of coerced sexual intercourse into two categories, thereby assigning to the fact finder the function of fixing the range of permissible punishment for convicted offenders by returning a verdict which appropriately fits the crime and the degree of force employed. The court described the proper standard of appellate review in these type of cases as follows:
[W]hether any reasonable jury . . ., viewing all of the evidence, in the light most favorable to the prosecution could find beyond a reasonable doubt that the defendant . . . [caused] the results required by both the aggravated and forcible rape statutes and that the degree of force employed warranted punishment in the greater, rather than lesser, degree. . . .
Id. at 1087. See also, State v. Price, supra; State v. Stevens, 33,700 (La.App. 2d Cir.8/23/00), 766 So.2d 634.
The difference between aggravated rape and forcible rape is the "degree of force employed and the extent to which the victim resists." State v. Price, supra; State v. Dixon, XXXX-XXXX (La.App. 5th Cir.3/15/05), 900 So.2d 929. A greater degree of force is necessary to justify the more serious punishment imposed for aggravated rape. Id. The degree of force employed and the determination of the grade of rape is for the jury to decide. Id. A victim need not suffer physical harm to constitute the high degree of force necessary to support a conviction of aggravated rape. State v. Gaston, 412 So.2d 574 (La. 1982); State v. Howard, supra; State v. Clark, 437 So.2d 879 (La.App. 2d Cir.1983).
In the instant case, it is clear that the evidence supported a finding that the defendant was guilty of aggravated rape. It is undisputed that the defendant forced P.W. to perform oral sex on him, penetrated her vagina with his penis and attempted to penetrate her anus with his penis by threats of great and immediate bodily harm. The threats were accompanied by the defendant's apparent power to execute those threats. P.W. testified that when she initially tried to escape from the defendant, he "slammed" her head against the wall. When P.W. attempted to scream, the defendant repeated continuously, "Be quiet, bitch; I'm going to kill you, bitch. You're nothing but a whore. I'm going to rape you, and I'm going to kill you." She also testified that she fought the defendant "with all [she] had," and she bit him and scratched him. She further stated that the defendant continuously strangled her until she started to lose consciousness, and at one point, the defendant held her neck so tightly that her feet were not touching the ground. Additionally, when P.W. attempted to glance at the defendant, the defendant struck her in the head and told her, "Don't look at me, bitch. Don't look at me. I'm going to kill you." She also *1152 stated that the defendant repeatedly threatened that he would kill her when he finished raping her. The defendant's actions clearly placed P.W. in fear of great and immediate bodily harm, and any further resistance would have put her in further danger.
The defendant further asserts that the state failed to present evidence that the injuries were medically serious. Dr. Barbara Bellaire, a specialist in obstetrics and gynecology, testified that she examined P.W. on the night of the rape. Dr. Bellaire stated that P.W. had bruising around her neck, which was consistent with strangulation. P.W. also had bruises on the middle of her back, side and arm. Dr. Bellaire noted that P.W. had lacerations on her lower lip and the back of her skull, and blood was in her hair. According to the report from the rape examination kit, P.W. had bruising and abrasions in her vaginal and anal areas. Dr. Bellaire testified that the bruises were inconsistent with consensual intercourse.
On cross examination, Dr. Bellaire stated that she did not find any pubic hairs or semen. Dr. Bellaire stated that, during the examination, P.W. told her that the defendant did not ejaculate; therefore, the lack of semen was not unusual.
Moreover, Michelle Collins, a forensic scientist for the Northwest Crime Lab, also testified at trial. According to Ms. Collins, DNA testing revealed that the samples of blood and skin obtained from under P.W.'s fingernails were likely to be that of the defendant within a statistical probability of 1 in 1.3 quadrillion.
Viewing the evidence in the light most favorable to the prosecution, we conclude that any reasonable juror could have found beyond a reasonable doubt that the defendant was guilty of the greater offense of aggravated rape. The victim was prevented from resisting the defendant by threats of great and immediate bodily harm, and the threats were accompanied by apparent power of execution. The defendant attempted to strangle the victim and struck her several times. Therefore, this assignment is without merit.

ERROR PATENT
A review of the record reveals that the trial court, apparently without objection from the defense, omitted the responsive verdicts of "simple rape" and "attempted simple rape" from the verdict forms and jury instructions, as listed in LSA-C.Cr.P. art. 814(8). An alleged error concerning the sufficiency of the list of responsive verdicts given the jury, like error in the judge's charge to the jury, is not reviewable under LSA-C.Cr.P. art. 920(2) as error patent and may not be considered unless objection is made in the trial court in time for the trial judge to correct the error. See, State v. Craddock, 307 So.2d 342 (La. 1975); State v. Houston, 40,642 (La.App. 2d Cir.3/10/06), 925 So.2d 690.
In the instant case, during the trial, following a discussion between the parties and the trial court with regard to the responsive verdict forms, the defense requested the responsive verdict of "aggravated sexual battery" be added, but that request was denied. The defense did not object to the omission of the responsive verdicts of "simple rape" and "attempted simple rape." Thus, the omission is not reviewable by this court.

CONCLUSION
For the reasons set forth herein, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The victim's initials are used because of victim confidentiality requirements applicable to the instant case under LSA-R.S. 46:1844(W).
[2] Subsequently, P.W. was treated at the emergency room at Louisiana State University Health Sciences Center in Shreveport. The sexual assault examination revealed a laceration on the back of her head and on her lower lip, scratches on her hands, neck, and elbows and bruises on her neck and lower back. The examination of her vagina and anus showed bruising and erythema.
[3] According to the report of the DNA analysis, "The probability of finding the same DNA profile if the DNA had come from an unknown, unrelated Caucasian individual other than Donald Hanson was approximately 1 in 1.3 quadrillion."