# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 07-1255


**STATE OF LOUISIANA**

**VERSUS**

**HECTOR LEYVA-MARTINEZ**
**AKA HECTOR L. MARTINEZ**
**AKA HECTOR LEYVA**
**AKA HECTOR LAZARO LEYVA MARTINEZ**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 13551-04
HONORABLE ARTHUR J. PLANCHARD, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***


**OSWALD A. DECUIR**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Michael G. Sullivan, Judges.

**AFFIRMED WITH INSTRUCTIONS.**


> **John F. DeRosier**
> **District Attorney**
> **Carla S. Sigler**
> **Assistant District Attorney**
> **Fourteenth Judicial District Court**
> **1020 Ryan Street**
> **Lake Charles, LA 70601**
> **(337) 437-3400**
> **Counsel for Appellee:**
> > **State of Louisiana**

**W. Jarred Franklin**
**Louisiana Appellate Project**
**3001 Old Minden Road**
**Bossier City, LA 71112**
**(318) 746-7467**
**Counsel for Defendant/Appellant:**
      **Hector Leyva- Martinez**

**Hector Leyva- Martinez**
**In Proper Person**
**Louisiana State Penitentiary**
**Walnut-3**
**Angola, LA 70712**

**DECUIR, Judge.**

Hector Leyva-Martinez was charged by amended indictment with aggravated rape, a violation of La.R.S. 14:42, and carjacking, a violation of La.R.S. 14:64.2. After a jury trial, the Defendant was found guilty on both charges. After the Defendant's motion for post verdict judgment of acquittal was denied, he was sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence on the conviction for aggravated rape, and ten years at hard labor on the carjacking conviction. The sentences were ordered to be served consecutively.

On appeal, the Defendant raises four assignments of error: 1) insufficient evidence to prove the offenses of aggravated rape and carjacking beyond a reasonable doubt; 2) trial court error in the denial of a motion to suppress; 3) erroneous jury instructions on intent; and 4) excessive sentences. For the following reasons, we affirm.

**FACTS:**

On the evening of May 29, 2004, the victim, M.S.,[1] was with friends at the night club Yesterdays, located on Common Street in Lake Charles, Louisiana. Sometime during the night, feeling a little drunk and sick, she left the club and went out to her truck which was parked in the parking lot next to the street. She got into the truck, rolled down the windows to get some fresh air, and fell asleep. Upon awakening, the victim found herself being sexually attacked and held down by an unknown assailant. Her pants were pulled down and her sweater was pulled over her head. The assailant penetrated her vaginally and anally. He then threw her out of the truck and drove away. The victim discovered she did not know where she was and ran to the first house she saw for help. The Defendant was apprehended the next day when he returned to Yesterdays' parking lot to pick up his car. Shortly thereafter, the

---

[1] In accordance with La.R.S. 46:1844(W), the victim's initials are used to protect her identity.

victim's truck was found at his residence. Sperm samples were taken from the victim's rectum. The DNA samples were consistent with the DNA profile obtained from the Defendant.

## ASSIGNMENT OF ERROR NUMBER 1:

The Defendant does not deny that he was the rapist. He argues, however, that the evidence was insufficient to sustain a verdict of aggravated rape. He contends the evidence can only support a conviction for simple rape because there was a "lack of evidence that M.S. resisted the act to the utmost or that her resistance was overcome by force." Moreover, the Defendant argues, she was intoxicated at the time of the rape. In the alternative, the Defendant argues he was guilty only of forcible rape.

> Under *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Bellamy*, 599 So.2d 326 (La.App. 2d Cir.), *writ denied,* 605 So.2d 1089 (La.1992).

*State v. Hanson,* 41,195, p. 4 (La.App. 2 Cir. 8/23/06), 938 So.2d 1147, 1150, *writ denied*, 06-2318 (La. 4/20/07), 954 So.2d 158.

At trial, the victim testified as follows:

On Memorial Day, May 29, 2007, in the early evening she went with a friend to a bar in Lake Charles. She had a beer and played pool. About an hour later, she and her friend went to Yesterdays and met up with several other friends. M.S. stated she parked her Ford F-150 truck in the parking lot, next to the street and under a street light. She went in and drank five to six more beers. Early in the morning she began to feel woozy and went out to her truck to get some fresh air. She stated she threw-up, got into the driver's side of the truck, took off her shoes, and fell asleep.

2

She said she must have left the keys to the truck either on the center console or in the ignition.

The victim testified that the next thing she knew, she was bent over the center console of the truck. Her knees were on the passenger seat and she was shoved between the front seats with her face pushed into the back seat. She said she could not breathe:

> A. I fought and I screamed for him to stop; and like every time I could get my -- my arm free, I would try to hit and fight, but I mean, like my head was being pressed, and -- and I was being, like, choked.
>
> Like he had his hand on my neck pushing me into the seat. I fought as much as I could. I--I mean, like I was bent over the seat.
>
> . . . .
>
> Q. Did you fight back the whole time?
>
> A. Yes, sir, the whole time. I -- I think I hit him -- I know I hit him once whenever like I got my arm loose, because he was holding me. That's where all those bruises and stuff are from. And I -- I hit him once, like swinging behind me.
>
> Q. And what did he do in retaliation?
>
> A. That's whenever he hit me and that -- that mark's on my behind.

A videotape of an interview with M.S., conducted on the day following the attack, was shown to the jury. On the tape, M.S. stated that she was pressed between the front seats. She tried to turn around in order to see his face, but every time she attempted to, he would push her face into the back seat by her neck. She stated she felt as if she could have overpowered him if she had not been effectively locked in by the position she was in. She stated that he penetrated her several times vaginally and anally. She stated that she was very afraid and begged for her life. She tried to tell him she could not breathe, but he kept hitting her because she would not stop struggling.

3

The Defendant argues he could not have committed aggravated rape because the victim was unconscious when the rape commenced. According to the Defendant, this scenario fits the definition of simple rape not aggravated rape.

Louisiana Revised Statutes 14:42(A) defines aggravated rape as a rape "where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim" under any one or more of the following pertinent circumstances:

> (1) When the victim resists the act to the utmost, but whose resistance is overcome by force.

> (2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.

Conversely, the victim's intoxication can be a factor in simple rape, which is defined at La.R.S. 14:43(A), in pertinent part:

> [A] rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of a victim because it is committed under any one or more of the following circumstances:

> (1) When the victim is incapable of resisting or of understanding the nature of the act by reason of a stupor or abnormal condition of mind produced by an intoxicating agent or any cause and the offender knew or should have known of the victim's incapacity.

In *State v. Clark,* 04-901 (La.App. 3 Cir. 12/8/04), 889 So.2d 471, Clark argued that the evidence did not support forcible rape. He claimed the act was consensual; alternatively, he suggested the evidence would support only a conviction of simple rape because of the alcohol, marijuana, and prescription drugs taken by the victim. This court agreed.

> There was, however, ample evidence that C.T. was prevented from resisting the act by her own alcohol and drug induced condition and that the Defendant was aware of that condition. In our view, the facts of this case illustrate the very purpose of the simple rape statute: to criminalize behavior which takes advantage of a person who has had too much to drink and participates in an act to which he or she would not otherwise have consented.

*Id.* at 475.

In the present case, the Defendant argues that it was only after the rape occurred that M.S. offered any resistence. Therefore, he suggests, the element of the victim's resistance to the utmost has not been proven. The evidence in the record shows otherwise. The victim testified she screamed and tried to hit him, but he continued the sexual attack and overcame her struggles by forcing her face into the seat of the truck by the back of her neck. The victim's alcohol-induced condition, which had prevented her from resisting initially, ceased when she awoke. Despite her screams and struggles, the Defendant continued to penetrate her.

Alternatively, the Defendant argues that the evidence, while insufficient to support a conviction for aggravated rape, was sufficient to support a conviction for forcible rape. Forcible rape is defined at La.R.S. 14:42.1 which provides in part:

> A. Forcible rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
> (1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.

The Defendant points out that he was not armed during the incident and there was no substantial injury to M.S., or even torn clothing, beyond some scratches on her arms and minor bruising.

Louisiana jurisprudence has held that the difference between aggravated rape and forcible rape is the degree of force used and to what extent the victim resisted. *State v. Parish,* 405 So.2d 1080 (La.1981); *State v. Price,* 40,408 (La.App. 2 Cir. 12/16/05), 917 So.2d 1201, *writ denied,* 06-156 (La. 6/16/06), 929 So.2d 1284. In *Parish*, the supreme court stated that "it was the legislative aim to divide the continuum of acts of coerced sexual intercourse into two categories, aggravated rape

5

and forcible rape, thereby assigning to the jury the function of fixing the range of permissible punishment for convicted offenders by returning a verdict which appropriately fits the crime and the degree of force employed." *Parish*, 405 So.2d at 1087 (on rehearing).

In *State v. Dixon,* 04-1019 (La.App. 5 Cir. 3/15/05), 900 So.2d 929, the fifth circuit upheld a conviction for aggravated rape. Dixon argued that the evidence did not prove the requisite degree of force; that is, it did not show that the victim resisted to the utmost, was prevented from resisting by threats of physical violence, or that the defendant had a weapon.

However, the fifth circuit stated: "Taken in its entirety, it appears that the victim's testimony, combined with the physical evidence, supports the jury's decision that this was an aggravated, not a forcible rape." *Id.* at 935. The court stated that "[t]he jury had before it the responsive verdict of forcible rape, but determined the amount of force employed and resistance exerted amounted to aggravated rape." *Id.* at 936.

The record before us is replete with evidence of the vicious force used by the Defendant in the attack. For several days after the assault, M.S. bore a perfect imprint of his hand on her buttocks where he hit her. She had scratches and bruises on her arms, legs, and neck. Moreover, the medical examination revealed abrasions in her vagina with bruising and a tear and hematoma of her rectum. This was not a case of M.S. drinking too much and participating in an act to which she would not have otherwise consented, as in *Clark*. Additionally, while her injuries were not severe, it was not because she did not struggle to her utmost. "A victim need not suffer physical harm to constitute the high degree of force necessary to support a conviction of aggravated rape." *Hanson*, 938 So.2d at 1151. Louisiana jurisprudence has

6

consistently held that the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even if there is no physical evidence. *State v. Schexnaider*, 03-144 (La.App. 3 Cir. 6/4/03), 852 So.2d 450; *State v. Hotoph*, 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, *writ denied*, 99-3477, 00-150 (La. 6/30/00), 765 So.2d 1062, 1066. The physical evidence and the victim's testimony support the elements of force and intimidation which began when she woke up and continued throughout the attack.

When viewed in a light most favorable to the prosecution, we find the evidence supports a verdict of aggravated rape beyond a reasonable doubt and the jury's choice of verdicts will not be set aside.

The Defendant further argues there was insufficient evidence to convict him of carjacking. He argues the State failed to prove the element of force or intimidation. Carjacking is defined as "the intentional taking of a motor vehicle, as defined in R.S. 32.1(40), belonging to another person, in the presence of that person, or in the presence of a passenger, or any other person in lawful possession of the motor vehicle, by the use of force or intimidation." La.R.S. 14:64.2.

The record before us shows that the Defendant threw the victim out of the truck after committing an act of rape, after hitting her, and after pushing her face into the seat so that she had difficulty breathing. There was sufficient evidence of force and intimidation.

## ASSIGNMENT OF ERROR NUMBER 2:

The Defendant alleges error in the denial of his motion to suppress statements he made to the police. Defendant states English is not his native language, and he cannot read or write English; therefore, he should have been offered an interpreter

7

prior to any interrogation. For this reason, he contends his statements were involuntary and should have been inadmissible at trial.

Octavia Jones, a detective with the Calcasieu Parish Sheriff's Office, testified that she was the first law enforcement officer to make contact with Defendant when he arrived at Yesterdays to retrieve his car. She stated that although she did not question him at the time, she read him his *Miranda* rights. She said that he appeared to understand her, responded appropriately in complete sentences and, when asked if he understood his rights, answered in the affirmative.

Elizabeth Zaunbrecher, also a detective with the Calcasieu Parish Sheriff's Office and lead investigator in the case, testified that when she arrived at Yesterdays, the Defendant told her he had loaned his vehicle to a friend named Ramon the night before. Because Ramon had been too drunk to drive home, he returned the keys to the car that morning. The Defendant also said that he worked at I-HOP and had gotten off of work at 5:00 a.m. When Detective Zaunbrecher asked him to accompany her to the police station he agreed. She testified that he appeared to understand her and that he spoke appropriately and in complete sentences.

Detective Zaunbrecher testified that after they arrived at the police station she drove to I-HOP to talk to the manager. She was advised that the Defendant had been fired the day before for failure to show up for work on time. One of the employees from I-HOP offered to take her to where the Defendant lived, and when they arrived at the residence, she found the victim's truck parked in his driveway.

When she returned to the police station, Detective Zaunbrecher presented the Defendant with a *Miranda* Rights form. When he told her he could not read or write English, she read the form to him and had him initial indicating he understood what was read to him. When she confronted him with what she was told by the manager

8

of I-HOP, he told her that he had worked until midnight on May 29, 2007, then he went to Cowboys, a bar next to Yesterdays. He said he left his car in the Yesterdays' parking lot because he had hired two lesbians to perform sex acts for him.

Detective Michael Primeaux testified that he also read the *Miranda* Rights form to the Defendant and had him initial each right as it was read to him.

The Defendant testified at the hearing on his motion to suppress. He said that he was from Cuba and has been in the United States since 1980. A review of the Defendant's testimony indicates he understood the questions asked by the State and by defense counsel and answered in appropriate English without the assistance of an interpreter at the hearing.

A trial judge's ruling on whether or not a statement is voluntary is given great weight and will not be disturbed on appeal unless clearly unsupported by the evidence. In denying the motion to suppress, the trial court relied on the officers' testimony, the *Miranda* Rights forms containing the Defendant's markings, the Defendant's use of English while testifying, and the fact that he has been in the United States more than twenty years. Considering the totality of the circumstances, we cannot say the trial court abused its discretion in denying the Defendant's motion to suppress.

**ASSIGNMENT OF ERROR NUMBER 3:**

The Defendant contends the trial court erred when it instructed the jury as to the intent element of the crime of aggravated rape. The Defendant argues the wording of the instruction impermissibly shifted the burden of proof to him.

The trial court instructed the jury as follows:

General criminal intent is always present when there is specific intent. Whether criminal intent is present must be determined in light of ordinary experience.

9

Intent is a question of fact which may be inferred from the circumstances. You may infer that the defendant intended the natural and probable consequences of his acts.

Following the jury instruction, the Defendant objected to the above instruction, arguing that the quoted language allows the jury to impermissibly infer the Defendant's intent by relieving the jury of holding the State to its burden of proving intent beyond a reasonable doubt. The Defendant cites *State v. Corley*, 587 So.2d 193 (La.App. 3 Cir. 1991), *writ denied*, 91-2512 (La. 1/10/92), 590 So.2d. 1199, in support of his argument. In *Corley,* this court reversed a second degree murder conviction because the trial court instructed the jury that "[a] person is presumed to intend the natural and probable consequences of his acts." *Id.* at 195. More appropriate language was addressed in *State v. Mitchell*, 94-2078 (La. 5/21/96), 674 So.2d 250, *cert. denied*, 519 U.S. 1043, 136 L.Ed. 2d 538 (1996), the Louisiana Supreme Court upheld an instruction which clearly described the presumption of intent. The trial court had instructed the jury that "it 'may infer that the defendant intended the natural and probable consequences of his acts.'" *Id.* at 254-55. The supreme court explained:

> In *Sandstrom*[*v. Montana,* 442 U.S. 510, 99 S.Ct. 2450 (1979)]*,* the Court held that the trial judge erred in instructing the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts," since this instruction could be considered to be a mandatory presumption by the jury and thus improperly shift the burden of proof from the state. In *State v. Copeland,* 530 So.2d 526, 539 (La.1988), we stated:
>
>> The mere use of the word "presume" raises the spectre of a *Sandstrom*-type problem. For that reason, the preferable instruction is ". . . you may *infer* that the defendant intended the natural and probable consequences of his acts . . ." (emphasis in original).
>
> In the instant case, the trial judge's instruction follows the language we approved in *Copeland.* Clearly, the instruction does not set forth a conclusive presumption shifting the burden of proof from the state to defendant. Accordingly, this instruction was not erroneous.

10

In the present case, the trial court used the preferred instruction as articulated in *Mitchell*. Accordingly, there was no error in the instruction given to the jury.

**ASSIGNMENT OF ERROR NUMBER 4:**

In his final assignment of error, the Defendant asserts the sentences imposed are constitutionally excessive. He also argues the sentences should have been ordered to be served concurrently since the two offenses were a part of a common scheme or plan and the trial court did not cite reasons why the sentences should be imposed consecutively.

The Defendant was convicted of aggravated rape, a violation of La.R.S. 14:42, which provides that a person convicted shall be sentenced to life imprisonment without the benefit of parole, probation, or suspension of sentence. The Defendant was also convicted of carjacking. One who commits the crime of carjacking may be imprisoned for not less than two years and not more than twenty years, without benefit of parole, probation, or suspension of sentence. La.R.S. 14:64.2(B). Defendant was sentenced to a ten-year term for carjacking.

In *State v. Barling,* 00-1241, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied,* 01-838 (La. 2/1/02), 808 So.2d 331, this court held:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

11

In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied,* 03-562 (La. 5/30/03), 845 So.2d 1061, this court discussed what constituted a sentence that shocked the sense of justice or made no meaningful contribution to acceptable penal goals, and stated:

> [An] appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La. 7/6/00), 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook,* 95-2784 (La. 5/31/96), 674 So.2d 957, 958.

The life sentence for a conviction of aggravated rape is a mandatory sentence. The trial court had no discretion in fashioning a sentence for Defendant in this case. In *State v. Prudhomme,* 02-511, p. 17 (La.App. 3 Cir. 10/30/02), 829 So.2d 1166, 1177, *writ denied*, 02-3230 (La. 10/10/03), 855 So.2d 324, this court stated:

> A mandatory minimum sentence may be excessive if the sentence makes no measurable contribution to acceptable goals of punishment and amounts to the purposeful imposition of pain and suffering and is grossly disproportionate to the crime. *State v. Dorthey*, 623 So.2d 1276 (La.1993). On the other hand, a mandatory minimum sentence is presumed to be constitutional. *State v. Johnson*, 97-1906 (La.3/4/98); 709 So.2d 672. To rebut this presumption, the defendant must carry the burden to show that he is exceptional. *Id.* Specifically, the defendant must show that, due to unusual circumstances, he is "a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case." *Id*. at p. 8; 709 So.2d at 676 (quoting *State v. Young*, 94-1636, pp. 5-6 (La.App. 4 Cir. 10/26/95); 663 So.2d 525, 528, *writ denied*, 95-3010 (La. 3/22/96); 669 So.2d 1223).

At the sentencing hearing, the trial court made a determination of whether the carjacking sentence should be consecutive to, or concurrent with, the mandatory life sentence for aggravated rape. After noting several aggravating factors such as the

serious harm to the victim, the lack of any provocation, and the Defendant's criminal history, the court found no mitigating factors and imposed consecutive sentences.

The Defendant filed a motion to reconsider the sentence. Neither in that motion nor in this appeal has the Defendant made an argument as to why the sentencing court should have deviated from the mandatory sentence of life imprisonment. Indeed, he has offered no evidence suggesting that the mandatory sentence may be excessive. Rather, he asserts only that the mandatory life sentence was "nothing more than the needless imposition of pain and suffering and shocks the sense of justice." The Defendant has failed to meet his burden of demonstrating why he should be considered so extraordinary as to permit the trial court to deviate from the mandatory life sentence.

Regarding the ten-year sentence imposed for the carjacking conviction, the Defendant received half of the potential sentence he could have received. A sentence of less than the maximum sentence may nonetheless be constitutionally excessive. *State v. Marshall*, 94-461 (La. 9/5/95), 660 So.2d 819. However, considering the gravity of the crime committed in this case and the Defendant's prior criminal history, as noted by the sentencing court, we cannot say this sentence was excessive under the circumstances of the case.

The brunt of the Defendant's argument at the reconsideration hearing and in brief to this court is that the trial court should not have ordered the sentences to be served consecutively. Defendant points to La.Code Crim.P. art. 883, which provides that "[i]f the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively." Concurrent sentences are preferred when the

13

offenses arise out of a common scheme or plan, as in the current case, particularly if the offender is a first-time offender. *State v. Thibodeaux*, 05-1187 (La.App. 3 Cir. 3/1/06), 924 So.2d 1205, *writ denied*, 06-700 (La. 10/6/06), 938 So.2d 65. Concerning the question of the imposition of consecutive or concurrent sentences, the *Thibodeaux* court held:

> Imposition of consecutive sentences requires particular justification. *State v. Dunbar,* 94-1492 (La.App. 3 Cir. 5/31/95), 657 So.2d 429. "[T]he trial court must articulate particular justification for such a sentence beyond a mere articulation of the standard sentencing guidelines set forth in La.C.Cr.P. art. 894.1." *State v. Dempsey*, 02-1867, p. 5 (La.App. 4 Cir. 4/2/03), 844 So.2d 1037, 1040.

*Id.* at 1211. Citing *State v. Coleman*, 32,906, p. 42 (La.App. 2 Cir. 4/5/00), 756 So.2d 1218, 1247-48, *writ denied,* 00-1572 (La. 3/23/01), 787 So.2d 1010, the *Thibodeaux* court listed several factors to be considered when imposing consecutive sentences:

> Among the factors to be considered are the defendant's criminal history, *State v. Ortego,* [382 So.2d 921, *cert. denied*, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980). *State v. Jacobs*, 493 So.2d 766 (La.App. 2d Cir.1986); the gravity or dangerousness of the offense, *State v. Adams*, 493 So.2d 835 (La.App. 2d Cir.1986), *writ denied,* 496 So.2d 355 (La.1986); the viciousness of the crimes, *State v. Clark*, 499 So.2d 332 (La.App. 4th Cir.1986); the harm done to the victims, *State v. Lewis,* 430 So.2d 1286 (La.App. 1st Cir.1983), *writ denied,* 435 So.2d 433 (La.1983); whether the defendant constitutes an unusual risk of danger to the public, *State v. Jett*, 419 So.2d 844 (La.1982); the defendant's apparent disregard for the property of others, *State v. Parker*, 503 So.2d 643 (La.App. 4th Cir.1987); the potential for the defendant's rehabilitation, *State v. Sherer,* 437 So.2d 276 (La.1983); *State v. Lighten,* 516 So.2d 1266 (La.App. 2d Cir.1987); and whether the defendant has received a benefit from a plea bargain, *State v. Jett, supra*; *State v. Adams, supra.*

After reviewing the record before us, we find the sentencing court adequately expressed its reasons for imposing consecutive sentences. The sentencing court noted the seriousness of the crimes, aggravated rape and carjacking, the harm done to the

14

victim and the community, the need for serious confinement of the Defendant, and his extensive criminal record.

In brief, the Defendant argues the trial court erred when it considered his criminal background in imposing sentence because the trial court had not received a pre-sentence investigation report. While the record supports this contention, we observe that the record also reflects the Defendant did not object at the time of the sentencing to the trial court using the information given to it by the State, nor did the Defendant object at the hearing on the motion to reconsider. Accordingly, we find no merit to this argument.

We find no abuse of the trial court's considerable discretion in sentencing the Defendant to consecutive sentences of life imprisonment and ten years at hard labor.

**ERRORS PATENT:**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. Our review reveals that the record does not indicate whether the trial court advised the Defendant of the prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8. Thus, the trial court is directed to inform the Defendant of the provisions of Article 930.8 by sending appropriate written notice to the Defendant within ten days of the rendition of this opinion. The trial court is also directed to file written proof that Defendant received the notice in the record of the proceedings. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

For the foregoing reasons, the Defendant's convictions and sentences are affirmed.

**AFFIRMED WITH INSTRUCTIONS.**

15